## WEBB, Adm'r, v. RAILWAY COMPANY.

### (*Knoxville.* October 19, 1889.)

1. RAILROADS. *Observance of statutory precautions as to incorporated towns.*

   The statutory precaution for prevention of accidents requiring that on railway trains "approaching a city or town the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals until it reaches its depot or station," applies alone to incorporated, not to unincorporated, towns or cities.

   Code construed: § 1298, Subsec. 3 (M. & V.); § 1166, Subsec. 3 (M. & V.)

   Case cited and approved: Bright *v.*Railroad (MS., Knoxville, 1874).

2. SUPREME COURT PRACTICE. *Reversal for error in charge, when.*

   For error in the Court's charge of the law applicable to a material aspect of the evidence, this Court will reverse, although there may be proof tending to sustain the correctness of verdict upon other grounds.

3. ADMINISTRATOR. *Right to sue for injury causing death of his intestate, there being a widow.*

   Where the surviving widow of an intestate elects not to bring suit for injuries negligently inflicted upon her husband by another, and causing his death, the administrator of such intestate may bring such suit for the benefit of the widow and children. Where the widow interposes no objection to the administrator's suit, the defendant cannot do so.

   Code construed: §§ 3130–3133 (M. & V.); §§ 2291–2293 (T. & S.).

   Cases cited and distinguished: Flatly *v.* Railroad, 9 Heis., 230; Greenlee *v.* Railroad, 5 Lea, 418; Trafford *v.* Express Co., 8 Lea, 99, 100.

---

FROM BRADLEY.

---

Appeal in error from Circuit Court of Bradley County. D. C. TREWHITT, J.

J. N. AIKEN & SON and S. P. GAUT for Webb.

P. B. MAYFIELD & SON and W. M. BAXTER for Railway Co.

FOLKES, J. This was an action by an administrator to recover damages for the killing of plaintiff's intestate by the negligence of the employes of defendant company in the running of a train of cars.

There was a verdict and judgment for the plaintiff in the sum of $5,500, to reverse which, after the refusal of the Circuit Judge to grant a new trial, the defendant has brought the case here on writ of error.

The declaration contained two counts, in the first of which the plaintiff declares on the facts in an action on the case at common law. In the second, the right of recovery is placed upon the alleged failure of the defendant to comply with the statutory requirements set forth in § 1298 (M. & V.) Code. The Court instructed the jury with reference to the law governing the case, as made in each count, and directed them to say, in their verdict, upon which count they found, if at all, for the plaintiff.

In response to such instruction, the jury, as shown upon the face of the verdict, predicated the defendant's liability upon the second count—that is, upon the failure of the company to comply with the statutory requirements.

Concerning the facts, it is sufficient to say that plaintiff's intestate was killed, while on the track, by being run over by a regular train of the defendant, which was approaching the depot, in the town of Charleston, the accident occurring near the depot. There was a conflict in the proof as to whether the various provisions of the statute were complied with or not.

Under these circumstances, the Court charged the jury in the exact language of Section 1298, reading from the statute each subsection thereof, none of which need be noticed here except subsection 3, which is as follows: "On approaching a city or town, the bell or whistle shall be sounded when the train is at the distance of one mile, and at short intervals till it reaches its depot or station; and on leaving a town or city, the bell or whistle shall be sounded when the train starts, and at intervals till it has left the corporate limits."

In this connection the judge said to the jury: "As appropriate to the consideration of the matters in the second count, as to whether the injury complained of was in a town, and whether or not the defendant blew its whistle or rung its bell, as required by the statute, it is proper, perhaps, for me to define what is meant by the word town in the statute, or what would constitute or make a town. Upon this point I instruct you that a town may consist in the building, in close proximity or connection, a collection of or many houses in which people live, and do business, and have a market,

and stores of supplies, and in which such people live and do business, not as yeomen in the country, but as people living in a town or city; or it may consist in the laying off a piece of land or ground into town lots and streets, and people building thereon, and buying and selling, and living in such boundary as in a town, and recognized and treated as a town by people of the country and otherwise. There are various definitions for the word town, but I think the one I have given you sufficient in this case; *and, be the meaning of the statute, Section 1298, Subsec. 3, what it may as to trains on* LEAVING *the depot or station until they pass the corporate limits, I instruct you that as to trains* APPROACHING *the town, and the requirement of the company to blow the whistle and ring the bell, the town need not necessarily be an incorporated one for the statute to apply. The duty of the company under this part of the section applies alike to cities incorporated and to unincorporated towns.*"

It is unnecessary to say any thing concerning the definition above given of a town, inasmuch as the assignment of error is only predicated upon such part of the charge quoted as we have italicized.

The result of the charge, or its substance, is an instruction to the jury that the specific precautions pointed out in Subsection 3 of Section 1298 must be shown to have been complied with, or the verdict must be for the plaintiff, under Section 1299, which enacts, as we know, that "every railroad company that fails to observe these pre-

cautions, or cause them to be observed by its agents and servants, shall be responsible for all damages to persons or property, occasioned by, or resulting from, any accident or collision that may occur." So that if the jury had concluded from the proof that all of the precautions pointed out in the other subsections of Section 1298 had been complied with, and that the defendant had exercised all the prudence that devolved upon it under the rules of the common law, yet if they should find from the proof that the place of the accident was a town, within the definition given by the trial judge, although not an incorporated town, and if they should further find that the train inflicting the injury was approaching such town, and the company had failed to prove that the bell or whistle had been sounded when the train was at the distance of one mile, and at short intervals till it reached the depot or station, the verdict must be for the plaintiff. This was manifestly erroneous. The words of the statute must have a fair construction. There is no authority nor necessity for enlarging or extending or qualifying the meaning of the terms used in the statute, and every word must be given effect, if it can be done without doing violence to the manifest intention.

If an incorporated town or city were not meant, why say in the last clause of the section under consideration that the bell or whistle should be sounded at intervals till the train "has left the corporate limits?" Where and how are the cor-

porate limits of an unincorporated town to be located by the railroad company anxious to comply with this statute?

But it is urged at the bar that if this be so as to trains leaving a town or city, the first clause of the subsection which relates to trains approaching a city or town does not mention " corporate limits," and that as the accident here was occasioned by an approaching train, the limitation implied in the clause relating to departing trains should not control.

It is sufficient to say that the use of the term at the end of the section may reasonably, if not necessarily, refer and apply to the entire section. If it were not so intended and used, to what are we to apply the language of the first clause requiring the bell or whistle on an approaching train to be sounded "at the distance of one mile?" One mile from where if not from the corporate limits?

As we have already said, there is no necessity for giving any strained construction to this Act, for the reason that in unincorporated towns, as in all places along its road, the common law and the provisions of our other statutes (which are in the main but an embodiment of common law rules) are in all respects ample for the protection of life and property from the negligence and wrong of the agents and operatives of the railroads of the country.

A like construction was placed upon this statute

in an unreported case, *Bright* v. *E. T., V. & G. R. R. Co.,* at this place. See Opinion Book (1874), page 349.

For this error in the charge, the judgment must be reversed and cause remanded.

There is another assignment of error which must be disposed of, inasmuch as the case goes back for a new trial.

It is this: Has the plaintiff, who sues as administrator, the right to maintain this action, where the declaration alleges, and the proof shows, that the intestate, whose death was occasioned by the alleged negligence of the defendant, left a widow, still living?

It is contended that since the Act of 1871, Chapter 78, amendatory of §§ 2291 and 2292 of (T. & S.) Code (carried into the (M. & V.) Code at §§ 3130, 3131, and 3132), the right of action passes to the widow, and that the administrator cannot maintain an action for injuries resulting in death of his intestate except where there be "no widow."

If this contention be sound, it is fatal to the present action, and is not cured by verdict and judgment, as the question goes to the plaintiff's title.

This question has never been passed upon directly by this Court, so far as we are apprised. To determine the force of this assignment of error, we must examine the statutes in question.

The Act of 1851 (carried into the Code, (T. & S.) §§ 2291, 2292), is as follows:

Section 2291: "The right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act or omission of another, would have had against the wrong-doer in case death had not ensued, shall not abate or be extinguished by his death; but shall pass to his personal representative for the benefit of his widow and next of kin, free from the claims of his creditors."

Section 2292: "The action may be instituted by the personal representative of the deceased; but if he decline it, the widow and children of the deceased may, without the consent of the representative, use his name in bringing and prosecuting the suit, on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not, in such case, be responsible for costs, unless he sign his name to the prosecution bond."

Section 2293, which originated with the Code of 1858, and is not referred to in the Act of 1871, is here given, as it helps us to get at the meaning of the Act of 1871, by showing the state of the law on the entire subject at the time of the amendment under consideration. It is as follows:

"If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin, free from the claims of the creditors of the deceased, to be distributed as personal property."

In this state of the law the Act of 1871,

Chapter 78, is passed. It is in two sections. The first section is as follows:

"*Be it enacted by the General Assembly of the State of Tennessee,* That Section 2291 of the Code of Tennessee be so amended as to provide that the right of action which a person who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin, free from the claims of his creditors."

Section 2: "That Section 2292 be so amended as to allow the widow, or, if there be no widow, the children, to prosecute suit, and that this remedy is provided in addition to that now allowed by law in the class of cases provided for by said section and Section 2291 of the Code, which this Act is intended to amend."

Does this Act restrict the right of action theretofore existing in the administrator, and deprive him of the right to maintain a suit where there is a widow, or does it merely add to and enlarge the rights of the widow and children, without diminishing the powers of the administrator where the widow or children do not see proper to exercise the privilege?

The intention of the Legislature must be arrived

at, and this can generally be aided by a knowledge of the state of the law at the time of the passage of the amendatory Act. Now, as we have seen, prior to this Act of 1871 the Legislature had enacted that such actions should not abate by the death of the injured party, but that where death had ensued before action brought, the action must be by the administrator for the benefit of the widow and next of kin. And to guard against a failure of the administrator to sue, the widow and children were allowed to use his name, without his consent, and bring such action, provided a bond for costs were given, etc. And if suit had already been begun in the life-time of the deceased, it might proceed without revivor for benefit of widow and children.

So that, while the widow and children were the beneficiaries. of the recovery in either event, they were not allowed to bring the action in their own name.

Both before and since the amendment the administrator is in fact a nominal plaintiff, the recovery being for the widow and children. But while this was so, neither the widow nor children were allowed to bring such action unless they could make out a case of declination on the part of the administrator.

When we consider the object in view, and when we take the language of the amendatory Act itself, we are led to the conclusion that the Legislature intended merely to give the cause of

Webb, Adm'r, *v.* Railway Company.

action to the widow in her own name in prefer-
ence to any administrator, but not to the exclusion
of an administrator where the widow elected not
to sue; and her election or waiver will, be pre-
sumed where the suit is prosecuted by the admin-
istrator without objection by her, signified by
bringing the suit in her own name or otherwise.

To so hold is to give effect to every word of
the statute, and to carry out the declared purpose
of the Legislature as shown in the second section,
where it is said in terms that "this remedy is pro-
vided in addition to that now allowed by law in
the class of cases provided for," etc. And is also
to give effect to the language, "for the benefit of
his widow," found in the next to the last line of
Section 1 of the amendatory Act, where the per-
sonal representative is authorized to prosecute the
suit for the benefit of the widow and next of kin.

If it had been contemplated that the adminis-
trator was to have no right to sue where there
was a widow, it would have been folly to have
provided that his recovery should be for the ben-
efit of the widow.

It is true that to reach this conclusion we en-
counter some difficulty in the use of the language,
"in case there is no widow;" but this language,
being in apparent conflict with the language which,
in that event, allows administrator to sue for "her
benefit," we must reconcile such conflict if possible.

We believe that it is reconciled, and the in-
tention of the Legislature fully sustained, when

9 P

we hold, as we do, that the administrator is not debarred from suing simply because there is a widow who does not sue. She has the preference, undoubtedly, but may waive it, as it is manifestly for her benefit. We are the more content with this conclusion when we reflect that this is the construction that has in practice been placed upon this Act by the legal profession ever since its passage.

For us, at this late day, to hold otherwise, on any overnice or strict construction, would be to defeat many actions pending in the various Courts of the country, where the one year statute of limitations has barred a new action.

While such consideration would not lead us to a construction not otherwise sound, it strengthens and confirms a conviction otherwise reached under well-settled principles of law.

The case of *Flatley, Adm'r,* v. *M. & C. R. R. Co.,* 9 Heis., 230, is not, as counsel seem to insist, in the way of the conclusion reached. It only announces, in this connection, that prior to the Act of 1871 the widow could not maintain such an action; and in answer to the suggestion that, inasmuch as the statute gives the action for her benefit, she should be treated as person entitled to sue, the Court says: "It is a general principle that where a right is given by statute, and a remedy provided in the same Act, the right can be pursued in no other mode." We do no violence to this rule, but recognize it fully, in construing the act of 1871.

Nor is there any thing decided in *Greenlee* v. *E. T., V. & G. R. R.*, 5 Lea, 418, that is hostile to our construction of the Act in question. It merely holds that the widow, who, under the Act of 1871, has the right to sue in the first instance, has, as incident to that right, the power to dismiss or compromise such suit. But there is nothing in that case that negatives her power to waive the right which is hers "in the first instance." And the same may be said of *Trafford* v. *Adams Express Company*, 8 Lea, 99, 100, cited by counsel for the railroad.

The last assignment of error is therefore not well taken, but, as already stated, the judgment must be reversed and cause remanded for a new trial because of the error in the charge.