FELTON v. SPIRO.

(Circuit Court of Appeals, Sixth Circuit. February 2, 1897.)

No. 452.

1. DAMAGES FOR WRONGFUL DEATH—NUMBER OF BENEFICIARIES.
   When the statute giving a right of action for damages for negligence caus-
   ing death provides that the damages recovered shall inure to the benefit of
   the family of the deceased, it is competent to prove, upon the trial of such
   an action, the number of children left by such deceased.

2. SAME—WIDOW AND CHILDREN.
   The amendment of 1871 to sections 2291 and 2292 of the Code of Ten-
   nessee, relating to the recovery of damages for acts or neglects causing death,
   was intended to affect the procedure, and not the beneficiaries of the stat-
   ute; and since such amendment, as before, damages recovered in such ac-
   tions inure to the benefit of the widow and children of the deceased, and
   not to the widow alone.

3. NEW TRIAL—REFUSAL TO GRANT.
   When a trial court, upon a motion for a new trial, refuses to consider a
   ground urged therefor, or to exercise its discretion, for the reason that it
   considers it has no power to do so, such refusal may be assigned as error.
   Mattox v. U. S., 13 Sup. Ct. 50, 146 U. S. 140, followed.

4. VERDICT—SETTING ASIDE.
   A federal court, in which a jury has rendered a verdict, has power to set
   aside such verdict when, in its opinion, it is contrary to the decided or over-
   whelming weight of the evidence, and, in the exercise of a legal discretion,
   may properly do so, though the case is not one in which it would have been
   proper to direct a verdict. Railway Co. v. Lowery, 20 C. C. A. 596, 74 Fed.
   463, followed.

5. APPEAL—JUDGMENT OF REVERSAL.
   A judgment of reversal based solely on the ground that the trial court erred in
   not exercising its discretion on a motion for new trial requires, not the ordering
   of a new trial, but only a remanding of the case, for further proceedings from
   the point where the error was committed. In this case the direction to the trial
   court should be to consider and decide the motion for new trial.

In Error to the Circuit Court of the United States for the Eastern
District of Tennessee.

Chas. R. Head and Edw. Colston, for plaintiff in error.

H. H. Ingersoll, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and SAGE, District
Judge.

TAFT, Circuit Judge. This action was brought by Fannie Spiro,
as the widow of Herman Spiro, deceased, to recover damages for the
death of her husband, caused, as she alleged, by the negligence of
the servants of the defendant, Samuel Felton, receiver of the court
below, engaged, under the order of the court, in the operation of the
railway of the Cincinnati, New Orleans & Texas Pacific Railway. The
deceased, Herman Spiro, was a passenger on a local freight train of
the defendant. As he was about to alight from the train at a small
station in Tennessee, he was jerked or thrown violently from the
back platform of the caboose to the ground, and so injured that he
died very soon after. The negligence charged consisted in the sud-
den movement of the engine at a time when passengers were invited
to alight. The contention of the defendant was, and he called a

great many witnesses to sustain it, that the train had been standing still for five or ten minutes, affording the deceased ample time to leave the train in safety; that he negligently remained on board until the end of this time, and then, when the train began to back up, and while it was in motion, he rushed to the platform, and, in attempting to leave the moving car, he fell, and was injured. It may be remarked that the great weight of evidence supported the view that the accident was solely the result of the negligence of the deceased—first, in not leaving the car when invited to do so; and, second, in attempting to leave it when the freight train was in motion. Upon a first trial the jury disagreed. Upon a second trial, which is the one now under review, there was a verdict for the plaintiff of $6,000. There are several assignments of error based on the rulings of the court at the trial.

First, the court permitted the plaintiff, over the objection of the defendant, to prove the number of children the deceased left. In Pennsylvania Co. v. Roy, 102 U. S. 451, 460, where a plaintiff was suing a railroad company for a personal injury to himself, the supreme court held that evidence of the size of the family dependent on the plaintiff was not relevant to the issue, and was calculated to arouse undue sympathy in the minds of the jury, and to enhance the damages beyond a just sum. But, in Railroad Co. v. Mackey, 157 U. S. 75, 15 Sup. Ct. 491, where the action was by the administrator of one to recover damages for the death of his intestate caused by defendant's negligence, and the statute giving the right of action provided that the damages recovered should inure to the benefit of the family of the deceased, the same court held that it was entirely proper for the jury, in estimating the loss suffered by those in whose behalf the suit was brought, to take into consideration the number and ages of the children. If, therefore, under the statute of Tennessee, the action by the widow is for the benefit of herself and her children, the evidence objected to was rightly admitted.

By the Code of 1858 of Tennessee (sections 2291–2293) it was provided as follows:

"2291. The right of action which a person who dies from injuries received from another or whose death is caused by the wrongful act or omission of another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death; but shall pass to his personal representative, for the benefit of his widow and next of kin, free from the claims of his creditors.

"2292. The action may be instituted by the personal representative of the deceased; but if he decline it, the widow and children of the deceased may, without the consent of the representative use his name in bringing and prosecuting the suit on giving bond and security for costs, or in the form prescribed for paupers. The personal representative shall not, in such case, be responsible for costs, unless he sign his name to the prosecution bond.

"2293. If the deceased had commenced an action before his death, it shall proceed without a revivor. The damages shall go to the widow and next of kin free from the claims of the creditors of the deceased, to be distributed as personal property."

The distribution of personal property, under the Tennessee law, when there are a widow and children, is "to the widow and children equally, the widow taking a child's part." Code 1858, §§ 2429–2431.

78 F.—37

There is no doubt or dispute that, under unamended sections 2291 and 2292, the suit brought would be for the benefit of the widow and children, but the suit would have to be brought in the name of the personal representative, with or without his consent. In 1871, the first two sections above quoted were amended by an act which is still in force, and which provides:

"That section 2291 of the Code of Tennessee be so amended as to provide that the right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and in case there is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin, free from the claims of his creditors.

"Sec. 2. Be it further enacted, that section 2292 be so amended as to allow the widow, or if there be no widow, the children, to prosecute suit, and that this remedy is provided in addition to that now allowed by law in the class of cases provided for by said section and section 2291 of the Code, which this act is intended to amend."

The contention of the counsel for the defendant receiver is that the act of 1871 made the suit in the name of the widow for her own benefit alone, and that the children of the deceased husband would have no legal interest in her recovery. The argument rests on the substitution in the amendment of the disjunctive "or" for the conjunctive "and," as it occurs in unamended section 2291, in the phrase "for the benefit of the widow and next of kin." If this construction is correct, then we have the anomalous result that, where a suit is begun before the death of the injured person, the avails of the suit recovered after his death pass, by virtue of section 2293, which was not amended by the act of 1871, to the widow and children, but that when the suit is brought after the death, then the recovery is for the benefit of the widow, and not of the children. Certainly this result is to be avoided if possible without straining the language used. It is perfectly manifest that the whole object of the amendment was to remove the necessity for bringing the action in the name of the representative, and to give to the widow, or, in case there was no widow, the children, the right to bring the action without using the name of the representative. It was intended to affect the procedure and not the beneficiaries. This is made manifest by the fact that section 2293 was not amended. As the suit was by that section to proceed in the dead plaintiff's name without revivor, there was no need of using the name of the representative of the deceased, and hence no need of an amendment permitting the use of the widow's name instead of that of the representative. The clause of the amending act in which the disjunctive "or" is substituted for "and" of the old act is an awkward one. The intended meaning could only be certainly conveyed by separating the various cases intended to be covered and stating each by itself. The "or" was probably used in view of the possibility that there might be no widow, in which case the avails of the suit would of course go only to the next of kin; but the contingency in which there might be a widow and children was lost sight of. All the circumstances taken together lead to the conclusion that the change of "and" to "or" was

not to effect a change in meaning as to the beneficiaries, but arose from mere carelessness in the use of language. It is not uncommon, in order to carry out the obvious intent of the legislature, for courts to construe "or" as meaning "and." Massie v. Jordan, 1 Lea, 647; Union Ins. Co. v. U. S., 6 Wall. 759, 764.

Though the exact point here presented has never been in judgment before the supreme court of Tennessee, that court has frequently expressed the view that, where the widow sues in such a cause, she sues as trustee for herself and her children. Greenlee v. Railway Co., 5 Lea, 419; Webb v. Railway Co., 88 Tenn. 128, 12 S. W. 428; Loague v. Railroad, 91 Tenn. 461, 19 S. W. 430; Railroad Co. v. Acuff, 92 Tenn. 29, 20 S. W. 348; Holder v. Railroad Co., 92 Tenn. 146, 20 S. W. 537. In Railroad Co. v. Bean, 94 Tenn. 394, 29 S. W. 370, cited by counsel for the receiver, it was held that, where the right of action had once vested in the widow, the cause of action did not pass on her death to her representative, but was extinguished. But in that case there were no children, so that the court was not required to decide, and did not in fact decide, that the widow is the only beneficiary where there are children. We find no error in the action of the court in allowing evidence as to the number and ages of the real parties in interest in the suit.

The next assignment is based on the admission by the court of the statement of a photographer as to the condition of the track, at the point near where the accident occurred, some 23 months after the accident. Without objection, a photograph of the locus in quo, taken 23 months after the accident, was admitted. We cannot see how the photographer's statement prejudiced defendant. The condition of the track had but the remotest relation to the accident, and, the photograph which showed the track having been admitted without objection, it was certainly not reversible error to allow an oral description of the same thing.

It is also assigned for error that the court below permitted evidence by a witness that he had seen chains stretched across the open space in the railing on the platform of other cabooses, as tending to show that defendant's failure to have a chain on this caboose was want of due care. Whether this was error or not, we think it was cured by the court in its charge, which, in effect, instructed the jury that the defendant was under no obligation to have the chain stretched across this space, and that a failure to have the chain could be no ground for recovery. There is some reason for doubt as to whether this was a mere expression of opinion on the facts, or an instruction as matter of law; but we think that, taking all the language together, it may be properly construed as the latter, and that the error, if any, in admitting the evidence was thus cured.

The next, last, and chief assignment of error is based on the action of the trial court in refusing to exercise his discretion in respect of the motion of the defendant to set aside the verdict because contrary to weight of the evidence. The language and ruling of the court in passing upon the motion for a new trial is incorporated in the bill of exceptions. The court said (73 Fed. 91):

"I do not think, on the proof in this case, the court could properly have withdrawn the case from the jury by positive direction; and this *brings us to the* last objection taken, which is that the verdict is against the weight of the evidence. This is a question which has given this court great trouble, not only in this but other cases, and I shall be very glad indeed when the circuit court of appeals for this circuit shall have occasion to pass judgment upon this question, so that this court may have an authoritative general rule, at least, in the determination of this question. I wish to say, in the outset, that I think the decided weight of the evidence, both as to quantity and quality, shows that the deceased came to his death as the result of his own negligence, in not getting up and going out of the train when it stopped at his point of destination, and that he had ample time to have done so if he had used reasonable care and diligence on his own part. I think the proof shows, by the same decided weight, that the accident to him is due to the fact that he remained in the caboose, engaged in conversation, until after ample time to have left the car; the train was started in a backward motion in its regular operations; and that the deceased was thrown therefrom by reason of being on the rear platform while the train was in such motion, and, most likely, when it stopped moving backward, and let out the slack, or when it started south a second time. But, although the court takes this view of the evidence, the court does not feel that it can lawfully set aside the verdict on that ground alone. I desire not to be misunderstood about this proposition. The question here is one of the weight of the evidence. It is not a question of there being no evidence to support the verdict, misconduct on the part of the jury, error in the charge of the court or in the admission or rejection of evidence, or of the many other grounds on which a new trial may be granted. But the question is, when no other valid ground of rejection to the verdict exists, can the court set aside the verdict alone upon the ground that it is against the weight of the evidence, however decided the preponderance may be? It is to be remembered that the practice in the courts of the United States is different from that of the state court. In this court, when the undisputed evidence is so conclusive that the court would be compelled to set aside a verdict returned in opposition to it, the court may withdraw the case from the jury and direct a verdict. The terms in which this rule is stated differ somewhat in different cases, although the underlying principle remains the same. Examples of this difference in the form of statement of this rule may be seen by comparing Railway Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, reaffirmed in Railroad Co. v. Griffith, 159 U. S. 611, 16 Sup. Ct. 105, with Elliott v. Railway Co., 150 U. S. 245, 14 Sup. Ct. 85, and Southern Pac. Co. v. Pool, 160 U. S. 438, 16 Sup. Ct. 338. If, then, the evidence is such that a verdict returned in opposition to it would be set aside by the court, it is the duty of the court in the first instance to direct a verdict. It seems to follow, logically and necessarily, that if the evidence is not so conclusive that the court can thus withdraw the case from the jury, and is compelled to submit the case to the jury, the court is then not at liberty to set the verdict aside as against the weight of evidence. It seems to me that the right to do so is inconsistent with the right and duty to give a positive direction for the same reason before the verdict. It occurs to me that in any case it would be idle to say that the court must submit the case to the jury because it may not lawfully direct a verdict, and that, having submitted the case to the jury, it then can effect the same results practically as by direction in setting it aside as opposed to the evidence. * * * What has been said with reference to the cases just cited sufficiently indicates my view of the want of power in this court to set aside a verdict because against the weight of evidence, however decided that weight may be. There have been two trials in this case. On the first trial I would have withdrawn the case from the jury on the ground of contributory negligence on the part of the deceased, except for the testimony of the witness Riseden. On the second trial both sides of the case had been strengthened,—that of plaintiff slightly, and that of defendant decidedly. Nevertheless, I felt that, in view of the testimony of the same witness, Riseden, with some slight corroboration, I could not rightly direct a verdict, notwithstanding the great weight of the evidence introduced by defendant, and, unless I should give such direction, it is not likely that the result of this case will ever be different from what it is; and it is certain that the ver-

dict is a very moderate one, if the plaintiff is entitled to recover at all. I have been thus particular to state the view I take of my right and duty upon this motion, and of the rule under which I am acting; for, while my action in granting or refusing the new trial is not the subject of review. if I refuse to exercise the discretion to grant a new trial under an erroneous view of law and of my duty in the matter, this, I think, is an error which is the subject of review. Mattox v. U. S., 146 U. S. 140, 13 Sup. Ct. 50. It is only when the court, in the exercise of its discretion to grant or refuse a new trial, does so upon all competent evidence, and under a correct view of the law, that its judgment is not the subject of review, and when, instead of leaving it to be presumed that the court below acted under a correct conception of the law, that court distinctly states on record the view of the law by which the court was controlled, no reason is perceived why this is not subject to review on writ of error. For reasons indicated, the motion for a new trial is denied."

The perusal of this opinion leaves no doubt in our minds that the learned judge intended to refuse, and did refuse, to consider or act upon the motion for a new trial, in so far as it was based on the ground that the verdict was against the weight of the evidence, because he was of opinion that the court had no power to set aside a verdict on such a ground. It is contended that the remark of the court, in the course of his opinion, that the result of the case would be likely to be the same in another trial, shows that he was passing on the motion, and denying it on its merits. But, taking the whole opinion together, we must accept the positive statement of the learned judge himself, in his opinion, as to the meaning of his action, rather than the construction of counsel. Again, it is said that the motion for new trial was not filed in time. It was filed during the term at which the verdict was rendered. This is sufficient, under the federal practice authorized by section 726, Rev. St., Fost. Fed. Prac. § 376. Section 987, Rev. St., relied on, relates only to method of staying execution pending new trial, and does not limit the time in which motions for new trial may be otherwise filed. Rutherford v. Insurance Co., 1 Fed. 456.

A motion for a new trial is, of course, addressed to the discretion of the court, and, if the court exercises its discretion, and either grants or denies the motion, its action is not the subject of review. This is so well settled that it is unnecessary to cite authorities upon the point. But the motion for new trial is a remedy accorded to a party litigant for the correction by the trial court of injustice done by the verdict of a jury. It is one of the most important rights which a party to a jury trial has. It is a right to invoke the discretion of the court to decide whether the injustice of the verdict is such that he ought to have an opportunity to take the case before another jury. If, now, in exercising this discretion, it is the duty of the court to consider whether the verdict was against the great weight of the evidence, and he refuses to consider the evidence in this light on the ground that he has no power or discretion to do so, it is clear to us that he is depriving the party making the motion of a substantial right, and that this may be corrected by writ of error. In Mattox v. U. S. 146 U. S. 140, 13 Sup. Ct. 50, it was held that, where the trial court excluded affidavits offered in support of a motion for a new trial, and in passing upon the motion exercised no dis-

cretion in respect of the matters stated in the affidavits, the question of the admissibility of the affidavits was preserved for the consideration of the supreme court on writ of error, notwithstanding the general rule that the allowance or refusal of a new trial rests in the sound discretion of the trial court. This furnishes direct support for the view that the refusal of the trial court to consider at all as a ground for new trial that the verdict was contrary to the evidence may be assigned for error here.

We come, then, to the question whether a federal court, in which a jury has rendered a verdict, has the power to set aside a verdict when, in its opinion, it is contrary to the decided or overwhelming weight of the evidence, and in the exercise of a legal discretion may properly do so. Upon this point we have not the slightest doubt. This court, in Railway Co. v. Lowery, 20 C. C. A. 596, 74 Fed. 463, has already decided it. In an elaborate and most carefully considered opinion, Judge Lurton, speaking for the court, points out the distinction between that insufficiency in law of evidence to support an issue which will justify a peremptory instruction by the court, and that insufficiency in fact of evidence, when weighed with opposing evidence, which, while not permitting a peremptory instruction, will justify a court in setting aside a verdict based on it, and in sending the parties to another trial before another jury. The cases in England and in this country are reviewed at length by Judge Lurton, and the conclusion reached is fully supported by authority. The result is thus summed up (page 609, 20 C. C. A., and page 477, 74 Fed.):

"We do not think, therefore, that it is a proper test of whether the court should direct a verdict, that the court, on weighing the evidence, would, upon motion, grant a new trial. A judge might, under some circumstances, grant one new trial and refuse a second, or grant a second and refuse a third. In passing on such motions, he is necessarily required to weigh the evidence, that he may determine whether the verdict was one which might reasonably have been reached. But, in passing upon a motion to direct a verdict, his functions are altogether different. In the latter case, we think he cannot properly undertake to weigh the evidence. His duty is to take that view of the evidence most favorable to the party against whom it is moved to direct a verdict, and from that evidence, and the inferences reasonably and justifiably to be drawn therefrom, determine whether or not, under the law, a verdict might be found for the party having the onus. If not, he should, upon the ground that the evidence is insufficient in law, direct a verdict against that party."

See, also, a decision of this court at the present term, announced by Mr. Justice Harlan, in Insurance Co. v. Randolph, 78 Fed. 754.

It is apparent, from the foregoing, that the view of the learned judge at the circuit, expressed in the opinion on the motion for new trial, that because the court cannot direct a verdict one way, it may not set aside a verdict the other way, as against the weight of the evidence, is erroneous. Indeed, as distinctly pointed out by Judge Lurton, the mental process in deciding a motion to direct a verdict is very different from that used in deciding a motion to set aside a verdict as against the weight of evidence. In the former there is no weighing of plaintiff's evidence with defendant's. It is only an examination into the sufficiency of plaintiff's evidence to

support a burden, ignoring defendant's evidence. In the latter, it is always a comparison of opposing proofs.

There is a suggestion, in the opinion of the judge at the circuit on the motion for new trial, that to set aside a verdict as against the weight of the evidence is in violation of the seventh amendment to the constitution, providing that no fact tried by a jury shall be otherwise re-examined in any court of the United States than according to the rules of the common law. An examination of Judge Lurton's opinion in the Lowery Case will show that it was the habit of the judges of England, whence came the common law, to set aside verdicts as against the weight of evidence as early as Lord Mansfield's time and earlier. This would seem to show that the re-examination of the evidence necessary to set aside a verdict on such a ground was according to the rules of the common law.

The defendant receiver, therefore, is entitled to have the court below weigh all the evidence, and exercise its discretion to say whether or not, in its opinion, the verdict was so opposed to the weight of the evidence that a new trial should be granted, and the judgment of the circuit court must be reversed for this purpose. This reversal does not set aside the verdict. It only remands the cause for further proceedings from the point where the error was committed. We found no error in the action of the court upon the trial and before verdict, and hence we shall not disturb it, but shall leave it to the trial court, upon consideration of the weight of the evidence, to grant the motion for new trial, or not, as in its discretion it may deem proper. That the supreme court would have taken a similar course in the case of Mattox v. U. S. 146 U. S. 140, 13 Sup. Ct. 50, already cited, had it not been that there were also errors on the trial requiring a new trial, may be seen from the language of the chief justice in delivering the opinion of the court, where, in summing up the result of the action of the court in refusing to consider affidavits on the motion for a new trial, he says (page 151, 146 U. S., and page 53, 13 Sup. Ct.):

"We should, therefore, be compelled to reverse the judgment because the affidavits were not received and considered by the court; but another ground exists upon which we must not only do this, but direct a new trial to be granted."

See, also, Elliott, App. Proc. § 580.

The judgment of the circuit court is reversed, with instructions to the court below to consider and pass upon the motion for new trial in so far as it is based on the ground that the verdict was against the weight of the evidence. The costs of the writ of error will be taxed to the defendant in error. The costs of the circuit court will abide the event.