### CINCINNATI, N. O. & T. RY. CO. v. COX.

(Circuit Court of Appeals, Sixth Circuit. February 6, 1906.)

#### No. 1461.

TRIAL—REOPENING CASE FOR FURTHER EVIDENCE—DISCRETION OF COURT.

The refusal of a trial court on the second trial of an action to reopen the case to permit defendant to introduce an additional witness, after the second argument had been made to the jury, *held* a proper exercise of its discretion; no sufficient showing of surprise or of diligence to procure the testimony having been made to entitle defendant to the right claimed.

[Ed. Note.—For cases in point see vol. 46, Cent. Dig. Trial, §§ 159, 160].

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

W. L. Frierson and Edward Colston, for plaintiff in error.
D. F. Snodgrass and T. C. Latimore, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

RICHARDS, Circuit Judge. This was an action for personal injuries sustained by the plaintiff below, while in the employ of the defendant railway company as a fireman. Through the breaking of the shaker bar, the plaintiff was thrown from a moving engine, receiving severe injuries. It was charged that the shaker bar was defective, the handle bar not being securely fastened to the upright piece; that a proper inspection would have disclosed this, but there was no such inspection. The case went to the jury, and there was a verdict and judgment for the plaintiff. A reversal is asked on several grounds: First, because the court refused to direct a verdict for the defendant; second, because the court, after the evidence had closed and the arguments begun, refused to permit the defendant to introduce a certain witness; and, third, because the court should have granted a new trial for lack of the evidence of this witness.

1. The shaker bar is used to shake and loosen the ashes, cinders, and clinkers in the grate. It consists of an upright piece and a handle bar. The upright piece has a grate connection below and comes up into the cab alongside the boiler. At the upper end it is connected with a handle bar, also called the shaker bar; the latter having jaws which fit on either side of the end of the upright piece, and are fastened to it by a bolt held in place by a nut. When not in use, the handle or shaker bar drops down against the upright piece. When in use it is raised to a horizontal position and worked laterally. The accident occurred about 6:15 o'clock on the evening of October 23, 1903. The plaintiff and his engineer had been on the engine only that day, having been ordered to change to it at Oakdale about 5:30 o'clock that morning. Before they left Oakdale at 6 o'clock, the engineer inspected the engine; but the testimony conflicts as to whether he did or did not inspect the shaker bar. He says that the running parts of the engine were all the engineer was supposed to inspect thoroughly, but that he did look at the shaker bar, and saw the nut which holds in place the bolt. The plaintiff, on the other hand, says that he was in the cab during the inspection; that the engineer put in his time looking over the running parts and did not inspect the shaker bar, which was partially covered by the drip pan, or get into the cab, until they were about to leave. Both the engineer and the plaintiff used the shaker bar during the day. The plaintiff noticed it was loose, but not more so than other shaker bars. There was testimony that neither one nor two men could break the handle bar loose, if it was properly fastened to the upright piece. This handle bar, when found after the accident, had one of its jaws bent or sprung about a quarter of an inch. The plaintiff, after being hurt, requested his fellow employés to preserve the shaker bar and broken pieces—the bolt and nut; but the bolt and nut were either never found or not produced.

The plaintiff and his engineer by orders "swapped" engines at Oakdale the morning of October 23d, with Engineer Niles and his fireman, Cross. The latter had had engine 663, on which the accident occurred, for a week or more preceding. This case was tried twice. On the first trial Niles and Cross were both still in the employ of the railway company, and neither was produced as a witness. On the last trial, Cross was out of the employ of the company and was produced as a witness by the plaintiff. He testified that on the 18th of October, as they were leaving Chattanooga, he happened to "shake the grate" and the bolt of the shaker bar fell out. He told the engineer, and got down and got the best bolt he could out of a bolt keg on the side of the track, and put it in so that he could shake the grate until he got back to Oakdale. This bolt was smaller than the ordinary one. It came through about a half or three-quarters of an inch and had no "tap" on it. Although he reported the fact to Engineer Niles, nothing was done to repair the shaker bar, and it remained in that condition when he left the engine.

During the course of the trial, both before and after Cross testi-

fied, counsel for the plaintiff repeatedly referred to Niles as one in the employ of the defendant who would make an important witness, whom the plaintiff had attempted to subpœna, and who should be produced, and indirectly charged the company with running him off. After Cross testified, no request was made by the defendant for time in which to produce Niles. The trial proceeded, and the witnesses for the defendant were examined, a motion for peremptory instructions was submitted and overruled, and the arguments begun. The next morning, after the second argument was concluded, the defendant moved the court to be allowed to introduce Niles as a witness, supporting the application by the affidavit of its counsel, in which he stated that he was taken by surprise by Cross' testimony; that after hearing it he had sent for Niles, who was present, and would disprove Cross' statements if permitted to testify. This motion was overruled, and an exception taken. This took place on April 8, 1905. The record made at the time does not show the ground of the court's action. After the verdict there was a motion for a new trial, which was heard upon affidavits filed by each side. The main ground was the refusal to permit Niles to testify. This motion was overruled in an opinion filed May 13th. In this, after commenting on the affidavits, the court announced the conclusion that the railway company and its counsel had not used due diligence in the preparation of their side of the case, or they would not have been surprised by Cross' testimony. So the court denies the motion for a new trial on the ground of surprise. But the court—having thus given a good reason for denying a new trial in order to permit Niles to testify; in other words, having vindicated its exercise of the discretion undoubtedly vested in it to refuse to allow Niles to testify after the arguments had begun—became reminiscent, and, in explanation of its ruling during the trial, said it had refused to allow Niles to testify then because it did not think that "as a matter of law it could rightly permit the introduction of this evidence over objection of the plaintiff in the exercise of any power or discretion vested in the court in that behalf."

It is now contended that the court did have the power to permit Niles to testify, and for that reason the judgment should be reversed. We agree that the court had such power (3 Wigmore on Evidence, §§ 1878, 1879); but we think it did right in refusing to permit him to testify under the circumstances, and that the latter (the propriety of its action) is the question that was reserved by the record, and the only one. The exception taken at the time was to the denial of the motion, not to a refusal to entertain it for lack of discretionary power, as in Felton v. Spiro, 78 Fed. 576, 581, 24 C. C. A. 321; and if it was rightfully denied, the exception falls. That this is the only exception taken is apparent from the assignment of error, which reads as follows:

"Error on the part of the court in refusing to allow the defendant to introduce witness J. B. Niles, which application was supported by the affidavits of Charles R. Head and said Niles, after the evidence had closed the evening before this application was made; the application being made on the arrival of Niles in Chattanooga from Somerset, Ky., the next morning."

It is unnecessary to discuss the assignment based on the refusal to instruct in favor of the defendant. There was testimony tending to establish the charge of negligence, and the case was properly submitted to the jury.

The judgment is affirmed.