## SCOTT v. BALTIMORE & O. R. CO.

No. 8828.

Circuit Court of Appeals, Third Circuit.

Argued May 16, 1945.

Decided Aug. 14, 1945.

Howard Burtt, of Philadelphia, Pa. (Guckes, Shrader & Burtt, of Philadelphia, Pa., on the brief), for appellant.

B. Nathaniel Richter, of Philadelphia, Pa. (William T. Connor, John R. K. Scott, and Hardie Scott, all of Philadelphia, Pa., on the brief), for appellee.

Before DOBIE, GOODRICH, and McLAUGHLIN, Circuit Judges.

GOODRICH, Circuit Judge.

This is an action brought under the Federal Employers' Liability Act[1] and under the Safety Appliance Acts[2] to recover damages for personal injuries alleged to have been suffered by the plaintiff, an employee of defendant, as a result of being thrown from the rear platform of a caboose attached to a train operated by the defendant near Foy's Hill, Maryland. The District Court summarized the events with clarity as follows:

"Walter H. Scott, plaintiff, was employed as a brakeman by the Baltimore & Ohio Railroad Company, a corporation, defendant. On June 2, 1943, while on monitor duty, and while seated in the caboose of defendant's train which was making a run from the Potomac Yard to Philadelphia, the plaintiff noticed something on the westbound track and moved to the rear of the caboose to get out on the platform for a clear view. As he put one hand on the door jamb and reached out for the handrail under the window at the rear of the caboose on the platform, the train gave a violent jerking and jarring that twisted and threw the plaintiff out the side of the caboose and onto the tracks below. At this time the entire train was over the crest of Foy's Hill. The plaintiff introduced evidence to show that the injuries he sustained as a result of the fall were caused either by the negligence of the defendant's engineer or by the defectiveness of the throttle dog or latch. The jury returned a verdict in favor of the plaintiff in the amount of $35,000. Defendant filed a motion to set aside verdict and judgment thereon, and for judgment in favor of defendant for a new trial."

The motion was dismissed and defendant now appeals from the judgment rendered in the sum of $35,000 and costs.

The points for our consideration are three: (1) whether a Locomotive Inspection Report dated June 3, 1943 was admissible in evidence in view of the existence of an earlier dated report; (2)

[1] 45 U.S.C.A. § 51 et seq., 35 Stat. 65, Act of April 22, 1908, c. 149.

[2] 45 U.S.C.A. §§ 1–16, 27 Stat. 531, Act of March 2, 1893, c. 196.

whether recovery based upon the Boiler Inspection Act [3] was permissible when that Act had not been pleaded; and (3) whether the verdict of $35,000 was excessive.

Immediately upon arrival of the train at Philadelphia on the day of the accident the Locomotive Inspection Reports dated June 2, 1943 were filled out. The next day another set of reports, dated June 3, were made at the main shops in Maryland. On the first reports no defect relevant here was mentioned; on the second a defective throttle dog was noted. Defendant railroad argues that since a 168 mile trip with two other engineers at the controls intervened between the reports only the first set is admissible. The argument must be premised on the assumption that the two sets of reports are qualitatively equal.[4] Not only is this open to grave question but it is even doubtful whether the first reports actually comprised an examination of the throttle dog. The engineer seems to have reasoned that he would have known of a defect merely through operation and hence needed no specific inspection of the throttle dog.[5] It is, however, for the jury to decide this in light of the evidence. Most particularly is this true when we consider that the engineers on the subsequent 168 mile run also reported no defect and yet the examination at the main yards made immediately thereafter did reveal a defect. The first set of reports are not so conclusive as to render the second reports inadmissible. The two sets of reports are so different qualitatively (and even in subject-matter as the jury might well have concluded) that the jury was rightly given the opportunity to weigh both, since each has probative value on the main question, that is. the condition of the throttle dog on June 2. It was certainly within the bounds of judicial discretion to admit both sets of reports in evidence.

The defendant's second point is that the proof offered by plaintiff did not correspond with the pleadings since allegedly the Boiler Inspection Act was not pleaded by name or number and yet was used as the basis for liability. This argument stems from a mere technical failure to make a citation in the complaint broad enough.[6] In substance, however, we find that the complaint set out, among other grounds, "negligent at law" and failure "to provide the plaintiff with a safe place to work"; that the District Judge took judicial notice of the Boiler Inspection Act and included it in his charge to the jury; and that the proof centered about the question of a mechanical defect in the throttle dog from which injury

[3] 45 U.S.C.A. §§ 22–34, 36 Stat. 913, Act of February 17, 1911, c. 103.

[4] The Report of June 3, 1943, that was made by an Inspector at the main shop in Baltimore, Md., specifically stated: "Throttle dog don't hold." The report of June 2, 1943, made by the engineer and fireman was the result of inspection for which the railroad allowed only ten minutes and which followed a long hard run. The supplemental mechanical report of the same day, while made by an Inspector, does not indicate whether the throttle dog was examined by him. There was testimony that this was apparently not part of his job.

[5] The trial Judge asked the engineer if having operated the throttle that day and having found it to work satisfactorily, he had not assumed the throttle dog was all right. The reply was "Yes." And to the further question, "That is what I wanted to know, whether you inspected it" the answer was, "There was no necessity,—when it operates O.K. I didn't need to inspect it." As f.n. 4, supra, indicates, the mechanical Inspector on June 2, 1943, also apparently did not inspect the throttle dog.

[6] The Safety Appliance Acts were pleaded. In the listing of Federal Acts by Popular Names Or Short Titles, page 104, compiled by Shepard's Citations the citation for the Boiler Inspection Act is listed under the Safety Appliance Acts. Also, 45 U.S.C.A. 1-117, comprising sections 1-46 and including section 23, the Boiler Inspection Act, are all listed in U.S.C.A. under the general heading of "Chapter 1.— Safety Appliances and Equipment on Railroad Engines and Cars, and Protection of Employees and Travelers." Defendant rests his entire argument of variance between allegata and probata on the ground that the complaint states that the cause of action arises under " 'The Federal Employer's Liability Act,' and under the Safety Appliance Acts, Title 45, U.S.C.A., Sec. 1-16 incl." From the fact that the citation does not contain section 23, the Boiler Inspection Act, defendant contends that the latter Act was not pleaded. The fact is, however, that the Safety Appliance Acts were pleaded and that they include the Boiler Inspection Act. The further fact that the citation given is not inclusive enough, since the Safety Appliance Acts run from section 1-46 of 45 U.S.C.A. and not merely 1-16, does not change the pleadings.

resulted. The jury having found such a defect which violated an Act of Congress judicially noted, then those allegations of the complaint which prepared the way for a proof of liability under the Act were properly satisfied. That a far more specific allegation of the complaint charging a defect in handrails was never substantiated by any offer of proof whatsoever, neither indicates abandonment of one theory of liability for another nor does it preclude the plaintiff from showing other defects. The only evidence adduced by either side, apart from extent of injury, was to two questions: (1) whether the train jolted or jarred at Foy's Hill and (2) whether there was a defective throttle dog such as would account for a possible jolting or jarring. Defendant did not object at any time that offer of proof of a defective throttle dog took him by surprise.[7] We must conclude that proof and pleadings were in accord and defendant can maintain neither variance nor surprise.

Perhaps the shortest and most conclusive answer to make to the defendant's contention in this respect is that the present rules [8] permit plaintiff to change his position in this way and that the citation of State cases to the contrary is irrelevant. We may assume, arguendo, that plaintiff started his action on one theory which his proof did not support. Then the proof, we may assume, sustained recovery on another ground. It is true that the pleadings could then be amended to conform to the proof, but obviously this would be no satisfaction to the defendant. The only injustice to the defendant in such a situation is when he is compelled to go on with the trial and meet a new point which is a surprise to him and on which he has had no opportunity to prepare. That situation is not claimed by the defendant to exist here and, therefore, his point completely disappears.[9]

The third point urged by the defendant is that the damages fixed by the jury at $35,000 are excessive. The members of the Court think the verdict is too high. But they also feel very clear that there is nothing the Court can do about it.

In the first place, this plaintiff's claim is based on an accident in which he suffered physical injury with claimed mental repercussions.[10] Insofar as the award of damages to him consists of compensation

---

[7] Although defendant vigorously objected to introduction of the reports of June 3, 1943, which proved a defective throttle dog at that time it was on the ground that the reports of June 2, 1943, were conclusive as the last evidence and those of June 3, 1943, hence not admissible; there was no allegation of surprise. As a matter of fact, the reports objected to were in defendant's custody and defendant knew their contents better than anyone else.

[8] In particular, Federal Rules of Civil Procedure 15(b), 28 U.S.C.A. following section 723c: Amendments to Conform to the Evidence. "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

[9] 1 Moore's Federal Practice 786 § 15.-01: "At the trial, Rule 15 enables the case to be litigated on the merits. It does this in two ways: (a) in effect pleadings are automatically amended to conform to proof on issues tried by express or implied consent; (b) if objection is made to the trial of an issue not raised by the pleadings, an amendment is to be allowed to raise the issue, unless the objecting party can show that he would be *actually prejudiced*, and even in that case the court may permit the amendment and grant a continuance, so that the objecting party can meet the new issue and thus obviate the prejudice which he would suffer if obliged to litigate the issue at that time."

[10] The extent to which psychic disturbance was a feature of plaintiff's condition may best be indicated in the words of his own chief medical witness, "there is in this case a tremendous amount of functional overlay which is so marked that it throws a great deal of doubt over all his complaints." In a medical report, the only other medical evidence introduced by plaintiff, we also find the statement, "I do not think he is malingering although he may

for pain and suffering it is, obviously, nothing that an appellate court can, or a trial court for that matter, measure by a yardstick as to whether the jury has given too much or too little. In the second place there was, as might well have been expected, very sharply conflicting medical testimony as to how badly the plaintiff was hurt. Some of the testimony went so far as to indicate that the plaintiff was merely malingering but there was other testimony, if the jury cared to accept it, which showed him to be very badly off. It indicated that treatment would have to continue, that the plaintiff could only have a light schedule of work for the rest of his life, and that he would have to change his occupation to carry on any useful activity. Which of these medical experts was to be believed is not something for an appellate court to decide, and nobody would seriously contend that it was. In the third place, the defendant is in a federal appellate court. The damages were fixed by the jury and the verdict was reviewed, so far as the judge has control over the jury's action, by the District Court upon the motion for a new trial. Judicial control of the jury's verdict in this kind of case is primarily for the trial court. Dubrock v. Interstate Motor Freight System, 3 Cir., 1944, 143 F.2d 304. A long list of cases in the federal courts [11] demonstrates clearly that the federal appellate courts, including the Supreme Court,[12] will not review a judgment for excessiveness of damages even in cases where the amount of damage is capable of much more precise ascertainment than it is in a personal injury case. There is no complaint here that the jury were improperly instructed as to the law or that any statutory limit of recoverable amount of damages has been exceeded.

We have, instead, a case where no precise rule of translating injury into money can be formulated, where the medical testimony is confusing and contradictory and where the trial judge has thought the verdict sufficiently within bounds of reason to refuse a new trial. While as triers of fact we should be inclined, if we agreed with the plaintiff's testimony, to award a smaller sum, we think to do so here would be to pass the point which we, with propriety, may reach.

Judgment is affirmed.

---

be subconsciously exaggerating his symptoms."

[11] A few of the more recent cases are: Zarek v. Fredericks, 3 Cir., 1943, 138 F.2d 689; Herring v. Luckenback S. S. Co., 2 Cir., 1943, 137 F.2d 598; Gay, Sullivan & Co. v. Glaser, Crandell Co., 7 Cir., 1939, 102 F.2d 149; Swift & Co. v. Ellinor, 5 Cir., 1939, 101 F.2d 131; Searfoss v. Lehigh Valley R. Co., 2 Cir., 1935, 76 F.2d 762. The point is taken as well settled in these cases, hence for a fuller discussion it is necessary to go back to the early cases. Of course, if it can be shown that a jury award of damages is illegal as contrary to limits of amount established by law, or that the jurors have been activated

by partiality, prejudice, corruption or other improper motive then the appellate tribunal may set the verdict aside on the ground indicated. L. E. Whitman Const. Co. v. Remer, 10 Cir., 1939, 105 F.2d 371; American Ice Co. v. Moorehead, 1933, 62 App.D.C. 266, 66 F.2d 792.

[12] Eastman Kodak Co. v. Southern Photo Materials Co., 1927, 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684; Southern Railway-Carolina Division v. Bennett, 1914, 233 U.S. 80, 34 S.Ct. 566, 58 L.Ed. 860; Herencia v. Guzman, 1910, 219 U.S. 44, 31 S.Ct. 135, 55 L.Ed. 81; City of Lincoln v. Power, 1894, 151 U.S. 436, 14 S.Ct. 387, 38 L.Ed. 224.