## SOUTHERN PAC. CO. v. GUTHRIE.
### No. 12164.

United States Court of Appeals
Ninth Circuit.
Jan. 15, 1951.

A. B. Dunne and Dunne & Dunne, all of San Francisco, Cal., for appellant.

Thomas C. Ryan, Daniel V. Ryan and Ryan & Ryan, all of San Francisco, Cal., for appellee.

Before the Court sitting in bank.

POPE, Circuit Judge.

After our decision in Southern Pacific Company v. Guthrie, 9 Cir., 180 F.2d 295, we granted a rehearing limited to the questions "whether the damages are excessive, and if so, what the action of the court should be." The argument upon rehearing was before the court sitting in bank.

The facts relating to the character and extent of Guthrie's injuries, and his loss of prospective earnings, are stated in the former opinion. There the court attempted to arrive at a conclusion as to the limit of permissible award for the loss of expected earnings. It is apparent that this item of pecuniary loss is much more susceptible of calculation than those items of damages coming within the description of pain, suf-

fering, inconvenience and disfigurement. In order properly to appraise the verdict, the court, in the earlier opinion, undertook to discover the maximum possible allowance for the loss of earnings, assuming that the balance of the total verdict must be charged to the non-pecuniary losses, pain, suffering, etc.

█ In attempting to evaluate the evidence as to the damage resulting from lost earnings we found ourselves compelled to deal with a record devoid of evidence as to the probable present worth of the lost earnings. Thus, there was no evidence such as the cost of an annuity which would be a substantial equivalent of the lost earnings. Hence the court was obliged, as we are now, to refer to matters which we may notice judicially, such as the probable rate of interest available from safe investments. It should be understood that none of the factors which are thus considered are absolute. The previous conclusions as to present worth of the prospective earnings, were necessarily arrived at by a consideration not only of Guthrie's life expectancy but also of the earning power of money. There is of course no rule of law which determines the probable rate of interest obtainable upon investments in safe securities.

Both parties have pressed us with considerations which, they say, should alter these conclusions. Such are, whether expected gross earnings must be calculated without regard to probable tax deductions; whether we should assume an expectation of earning beyond the age of compulsory retirement enforced by this employer; and, whether we should assume that Guthrie is not totally disabled to earn money in the future. In the former opinion the court expressed the view that due regard for the principle of compensation required recognition that a plaintiff should not be in a better position financially than he would have been if he had continued to work and that, hence some consideration of tax de-

ductions is proper; that the earning power of money should be calculated at not less than 3 per cent;[1] that there is no justification for speculating either that Guthrie would be able to earn money, or that his employment would have continued beyond age 70 had his injuries not occurred. It was thought that the evidence did not disclose a pecuniary loss in excess of the present worth, calculated at 3%, of $6000 a year for eleven years. Calculated exactly, this was $55,515.74. The members of the court agreed that the balance of the verdict amount, some $45,000, as an award for such items of damage as pain and suffering, inconvenience and disfigurement, was "too high". They differed as to whether this court should direct a remittitur.

We are now persuaded that the figure $55,515.74 should be enlarged, somewhat, and in two respects. We previously assumed Guthrie a man "past 59". Actually, he was two months less than 59, and therefore "past 58". Our calculation of eleven years' earnings was somewhat less than it should have been, although the difference would extend to no more than two months' earnings. We also considered that calculation should be based on no more than $6000 a year, because of necessary tax deductions. We think the court's view that the net take home pay, after taxes, would represent the actual loss, is correct; but we are now convinced that we cannot tell how much this would be. Under the tax law then in force, he could look forward to an additional exemption after age 65, and because he was married, the split income features of the law would give two additional exemptions when his wife reached 65, something about which we cannot tell. All we do know is that in 1946, his income tax on $5,165.92 was $724 less a "rebate" of "around $200".

In the nature of such a case there is bound to be some uncertainty, even as to such pecuniary matters as future earnings. What Guthrie's ultimate earnings, net or

1. The requested instruction approved in Gulf, C. & S. F. R. Co. v. Moser, 275 U. S. 133, 135, 48 S.Ct. 49, 50, 72 L.Ed. 200, referred to "the highest net rate of interest". The most recent opinion on the question of an appropriate interest is Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 407, 4 A.L.R.2d 1064, which called 3% interest "a conservative estimate of return".

928

gross, would be, cannot be foretold. While it may be prophesied that during his lifetime income taxes will continue, there is not equal certainty as to their impact on him. In Chicago & N. W. Ry. Co. v. Curl, 8 Cir., 178 F.2d 497, 502, the court held it not prejudicial error to refuse evidence of the amount of income tax and other deductions, because of the inherent uncertainty in such matters, saying, "We may assume that the jury were aware of * * * the fact that the average earnings, net or gross, of the appellee for the future could not be definitely known".

As was said in the former opinion, if no account were taken of an income tax deduction, the present worth of Guthrie's lost earnings for eleven years would amount, under the method of calculation employed by the court, to $63,778.33. Because of the uncertainties mentioned, it can be said that the maximum present worth shown was somewhere between that figure and the $55,515.74 previously mentioned. Under the circumstances, we cannot assume that the trial court was wrong in stating that the figure exceeded $60,000.

It thus appears that the jury must be held to have awarded some $40,000 for the non-pecuniary damages. With respect to that award the members of this court as now constituted are in agreement, as was the court on the former hearing, on two preliminary conclusions.

The first of these is that the verdict was too high.

The second is that there is no basis for any claim that the verdict was given under the influence of passion or prejudice. The record contains no proof of any appeals to passion and prejudice, which, under some authorities, would be essential before such a conclusion could be reached. Larsen v. Chicago & N. W. R. Co., 7 Cir., 171 F.2d 841, 845. And even if an imputation of passion and prejudice could arise from the mere size of a verdict, this one does not fall into any such category.

We are now confronted with two arguments with respect to our power and duty in these circumstances. On behalf of Guthrie it is argued that since showing of passion or prejudice is absent, even although we consider the verdict too high, regardless of what may be the rule in the state courts, we, as a federal appellate court, are without power to require a new trial even if we find the verdict excessive; and since we cannot direct a new trial, we cannot condition a denial of a new trial upon a remittitur. And, notwithstanding this court did just that in Cobb v. Lepisto, 9 Cir., 6 F.2d 128, an impressive list of cases is cited by appellee in support of his position. Among these cases is Scott v. Baltimore & O. R. Co., 3 Cir., 151 F.2d 61, at page 64, where the court said: "The members of the Court think the verdict is too high. But they also feel very clear that there is nothing the Court can do about it. * * * A long list of cases in the federal courts demonstrates clearly that the federal appellate courts, including the Supreme Court, will not review a judgment for excessiveness of damages even in cases where the amount of damage is capable of much more precise ascertainment than it is in a personal injury case." [2]

On the other hand this court cannot ignore its own decision in Cobb v. Lepisto, supra. Of the rule in that case, this court said in Department of Water and Power of City of Los Angeles v. Anderson, 9 Cir., 95 F.2d 577, 586: "Although it was held in Southern Ry. Co. v. Montgomery, 5 Cir., 46 F.2d 990, 991, that a Circuit Court of Appeals has 'no jurisdiction to correct a verdict because it is excessive,' the rule in this court is that the refusal to grant a new trial is 'such an abuse of discretion as is reviewable by this court' where the verdict is 'grossly excessive' ".[3]

More recently the Court of Appeals for the Fourth Circuit, in Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 408, 4 A.L.R.2d 1064, expressly approved and followed

2. In addition to the cases there cited are the following, to the same effect: Feltman v. Sammond, 82 U.S.App.D.C. 404, 166 F.2d 213; Reid v. Nelson, 5 Cir., 154 F.2d 724; Chicago & N. W. Ry. Co. v.

Green, 8 Cir., 164 F.2d 55; Herzig v. Swift & Co., 2 Cir., 154 F.2d 64.

3. In the Department of Water and Power case, supra, the court found the verdict not to be "grossly excessive".

Cobb v. Lepisto. There the trial judge had denied a motion for new trial made on the ground that the verdict was excessive. The judgment was reversed and a new trial ordered because of the appellate court's determination that the verdict was so excessive that the court's failure to set it aside constituted an abuse of discretion. The court said: "To the federal trial judge, the law gives ample power to see that justice is done in causes pending before him; and the responsibility attendant upon such power is his in full measure. While according due respect to the findings of the jury, he should not hesitate to set aside their verdict and grant a new trial in any case where the ends of justice so require. * * * The power of this court to reverse the trial court for failure to exercise the power, where such failure, as here, amounts to an abuse of discretion, is likewise clear. * * *"

The rule there stated cannot be reconciled with that of Scott v. Baltimore & O. R. Co., supra, and the cases cited therein, and in note 2 supra.

We are urged to repudiate the rule of Cobb v. Lepisto, and to adopt that followed in the group of cases last mentioned. Our power to review the action of the trial judge is challenged and denied.

If we were to agree with the position thus taken by appellee, it is obvious that we could place a period to this opinion at this point. We do not do so, for two reasons. The first is, that as we shall show more fully hereafter, we find it unnecessary, for the purpose of arriving at a decision herein, to determine whether Cobb v. Lepisto should be repudiated. The second reason is, that we are far from satisfied

that the contrary decisions are right, but think the present trend of authoritative decision is in the direction of the rule in our Cobb v. Lepisto case.

The rule stated in Scott v. Baltimore & O. R. R. Co., supra, and the cases cited therein, found expression in early decisions of the Supreme Court. Thus, in New York, Lake Erie & Western Railroad Company v. Winter, 143 U.S. 60, 12 S.Ct. 356, 361, 36 L.Ed. 71, it was said: "Whether the verdict was excessive, is not our province to determine on this writ of error. The correction of that error, if there were any, lay with the court below upon a motion for a new trial, the granting or refusal of which is not assignable for error here."

Substantially the same language was used in Southern Ry.-Carolina Division v. Bennett, 1914, 233 U.S. 80, 87, 34 S.Ct. 566, 58 L.Ed. 860. These early cases are explained by Judge Learned Hand in Miller v. Maryland Casualty Co., 2 Cir., 1930, 40 F.2d 463. The rule is there said to be based upon a procedural difficulty in that historically the writ of error did not afford review of the trial court's action upon a motion for a new trial, and it was said that the appeal later provided for was subject to the same limitations.[4] Subsequently, in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 482, 53 S.Ct. 252, 254, 77 L.Ed. 439, the Supreme Court expressly referred to the decision in Miller v. Maryland Cas. Co., supra, saying: "It has been suggested that a review must be denied because of the historical limitation of the writ of error to matters within the record, of which the motion for a new trial was not a part. Compare Judge Learned Hand in Miller v. Maryland Casualty Co., 2 Cir., 40 F.2d 463. But the denial of review can

---

4. "That it might be desirable to give such an appeal we do not deny. The direction of, or refusal to direct, a verdict is reviewable, and the question which arises is precisely the same as that upon a motion for a new trial, as the Supreme Court has declared again and again. Gunning v. Cooley, 281 U.S. 90, 50 S.Ct. 231, 74 L.Ed. 720. The Seventh Amendment is no bar to this, nor is it to the trial judge's 're-examination' of the damages. It is only a procedural difficulty that prevents our review; that is, that the court's action must of necessity await the verdict. That may not be a good reason, when the matter is of substance, but Congress has been consciously conservative. The Act of April 26, 1928 (28 U.S.C.A. § 861b) expressly confined the newly given appeal by all the statutes previously regulating the old writ of error, among others by those 'defining the relief which may be had.'" Miller v. Maryland Casualty Co., supra, 40 F.2d at page 465.

no longer rest upon this ground, since the record before the appellate court has been enlarged to include in the bill of exceptions a motion for a new trial, made either before or after judgment." In that case it was argued that the action of the trial court in denying a new trial could be reviewed as an abuse of the trial court's discretion. There a verdict for $1.00 had been returned in a case where, it was said, substantial damages were recoverable if any recovery was had. The court held that the verdict might be explained as a finding of the issues for the defendant. It was pointed out that the court of appeals had not declared that the trial judge abused his discretion and the court said: "Whether refusal to set aside a verdict for failure to award substantial damages may ever be reviewed on the ground that the trial judge abused his discretion, we have no occasion to determine."

We take this to mean that the Supreme Court in that case intended to leave open the question whether the trial court's refusal to set aside a verdict for excessive or inadequate damages could be reviewed on the ground that the trial judge abused his discretion. The court definitely established that the procedural difficulties mentioned by Judge Hand which had led to the deci-

sions in the earlier cases denying the possibility of review no longer existed.

Today, under the rules which determine the make-up of the record on appeal, there is even less reason for asserting the continuance of these procedural limitations. Rule 75 of the Rule of Civil Procedure, 28 U.S.C.A., relating to the record on appeal, is even more inclusive than the bill of exceptions referred to in the Fairmount Glass Works case, supra.[5]

Since the decision in the Fairmount Glass Works case, supra, it could not be said that there was any fixed rule that an appellate court might not review on appeal from the judgment, an order made upon motion for a new trial, where review is for an error of law. The impact of that decision was promptly recognized in a considerable number of cases including Pettingill v. Fuller, 2 Cir., 107 F.2d 933;[6] Bass v. Baltimore & O. Terminal R. R. Co., 7 Cir., 142 F.2d 779, 780; and General American Life Ins. Co. v. Central Nat. Bank, 6 Cir., 136 F.2d 821. Cf. United States v. Hayes, 9 Cir., 172 F.2d 677, 679. In Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L. Ed. 603, in which the court held that the trial court might not deny a new trial on condition that defendant consent to an "ad-

---

5. It is interesting to note what the adoption of Rules of Procedure has done to the older limitations upon appeals in criminal cases. In National Bank of Commerce v. United States, 9 Cir., 224 F. 679, 683, this court said: "No error is assignable from a denial of a motion for a new trial. Pickett v. United States, 216 U.S. 456, 30 S.Ct. 265, 54 L.Ed. 566. And that the motion is based upon newly discovered evidence does not constitute an exception. Holmgren v. United States, 217 U.S. 509, 521, 30 S.Ct. 588, 54 L.Ed. 861." Rule 39(b), Fed.Rules Crim.Proc. 18 U.S.C.A. provides: "The rules and practice governing the preparation and form of the record on appeal in civil actions shall apply to the record on appeal in all criminal proceedings, except as otherwise provided in these rules." And under Rule 33 a motion for a new trial on the ground of newly discovered evidence may be made within two years after final judgment. In Griffin v. United States, 336 U.S. 704, 69 S.Ct. 814, 93 L.

Ed. 993, decided April 25, 1949, the Supreme Court mentioned no procedural difficulty in an appeal from the denial of a motion for new trial on the ground of evidence discovered after conviction, or in reviewing the action of the trial court upon such an appeal. This is a long move from Blitz v. United States, 153 U.S. 308, at page 312, 14 S.Ct. 924, 926, 38 L.Ed. 725, where the court said: "We had supposed that it was well understood by the bar that the refusal of a court of the United States to grant a new trial cannot be reviewed upon writ of error."

6. "In spite of the fact that the courts of the United States have been most loath to review orders granting or denying motions to set aside verdicts, it is implicit in the opinion of Justice Brandeis in Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 483–486, 53 S.Ct. 252, 77 L.Ed. 439, that they may do so in certain cases, one of which would seem to be an abuse of the trial judge's discretion." 107 F.2d at page 936.

ditur", the court was in fact reviewing, for error of law, the order denying a new trial.

Title 28, § 2106, was apparently phrased in a manner designed to express the presently recognized freedom of the appellate courts from the type of procedural limitations referred to in the Miller case, supra. "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appropriate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances." [7]

Even if there had been any previous reason for doubt on this question, it would seem to have been put to rest by the statement of the Supreme Court in Affolder v. New York, Chicago & St. L. R. Co., 339 U.S. 96, 70 S.Ct. 509, decided after this court's former opinion in this case. There 339 U.S. at page 101, 70 S.Ct. at page 511, the court said of the claimed excessiveness of the verdict: "We agree with the Court of Appeals [8 Cir., 174 F.2d 486] that the amount of damages awarded by the District Court's [79 F.Supp. 365] judgment is not monstrous in the circumstances of this case." This language would be without point unless the Supreme Court was of the opinion that it might do something about the excessiveness of the verdict if its amount could be called "monstrous". This is not, we think, substantially different from our statement in the Department of Water & Power case, supra, that "the rule in this court is that the refusal to grant a new trial is 'such an abuse of discretion as is reviewable by this court' where the verdict is 'grossly excessive.'"

The statement made by the Supreme Court in the Affolder case has been drawn in question by the court whose decision was there reviewed. In St. Louis South-western Ry. Co. v. Ferguson, 8 Cir., 182 F. 2d 949, the court suggests that the language used by the Supreme Court discloses a mistaken assumption as to what the Court of Appeals had held. With apparent reluctance it recognized the possibility that the rule was as stated in the Affolder case, saying: "It may be that a change in the rule is desirable, to allow a general review of the question of excessiveness, such as is the practice in many state appellate courts, or with a more restrained sense of responsibility, perhaps, to permit judgment to be passed upon whether there has been an abuse of discretion by the trial court in refusing to set aside a verdict on motion for new trial." 182 F.2d at page 955.

For the reasons previously stated, we think, contrary to what the Court of Appeals for the Eighth Circuit implied, that what was said in the Affolder case was foreshadowed in the Fairmount Glass Works case. In the face of this statement in the Affolder case we are not prepared to withdraw what this court said in Cobb v. Lepisto.

But, even if it be the rule that we possess the power, in certain cases, to review the action of the trial court upon motion for new trial based on the size of the verdict, that power is not co-extensive with the area in which the trial court may act. We put to one side those cases in which it can be demonstrated that the verdict includes amounts allowed for items of claimed damage of which no evidence whatever was produced. Such total want of evidence upon a portion of the case would give rise to a question of law in the same manner in which a question of law is presented when, upon motion for a directed verdict, there appears an insufficiency of evidence as to the whole case.[8] There is no such want of evidence here.

7. For cases which infer from the provisions of Rule 59(d) requiring a specification of the grounds of the order, a right of review of an order granting a new trial, see Freid v. McGrath, 76 App.D.C. 388, 133 F.2d 350, and Youdan v. Majestic Hotel Etc. Corp., 7 Cir., 125 F.2d 15.

8. Cf. Campbell v. American Foreign S. S. Corporation, 2 Cir., 116 F.2d 926, 928: "No physician predicted that the plaintiff would be incapacitated for three years beyond the date of trial * * * The medical testimony is too indefinite to justify a verdict based on an award of maintenance at $2.50 for a term of three

■ It is also clear that we may review the denial of motion for a new trial "if the trial court erroneously excluded from consideration matters which were appropriate to a decision on the motion * * * or if it acted on the mistaken view that there was no authority to grant it on the ground advanced". Fairmount Glass Works v. Cub Fork Coal Co., supra; United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 247, 60 S.Ct. 811, 84 L.Ed. 1129; Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

It is urged that such is the case here,—that the refusal to grant a new trial involved an error in point of law because the trial judge, in making his ruling, made legal errors in evaluating the evidence of damages. It is said that the court, in ruling on the motion, applied an incorrect measure of damages, in that its conclusion that the loss of future earnings could amount to as much as $70,000 could only be arrived at by wholly disregarding probable income tax deductions, or by calculating present worth by assuming too low an interest rate, or by indulging both such assumptions.[9]

It is said this resembles those cases in which judgment has been reversed for denial of new trial where the record proceeded upon an erroneous hypothesis. Felton v. Spiro, 6 Cir., 78 F. 576. It is said the same was true in Virginian Ry. Co. v. Armentrout, supra, where the opinion of the trial court disclosed a calculation based on an interest rate, and an assumption of lessening of income tax which the appellate court thought not warranted. It is therefore argued that in eliminating consideration of the item of income tax the case is within the statement in the Fairmount Glass Works case, supra, that "its denial may be reviewed if the trial court erroneously excluded from consideration matters which were appropriate to a decision on the motion". We think that the record will not support this argument, for we find nothing in the court's order, wherein its reasons were set forth, which discloses any such error of law. We find nothing to show that the court either ignored the income tax deductions, or adopted an erroneous rate of interest in making its calculations or that it acted upon any other error of law, unless it can be said that the verdict was so "monstrous" or so "grossly excessive" that we should reverse the trial court's refusal to set it aside as an abuse of discretion.

■ When the trial court is presented with a motion for a new trial grounded on a claim of an excessive verdict its power to deal with the motion is not limited to questions of law. The same power and duty which the trial judge has to set aside any verdict and grant a new trial when he is of the opinion the verdict is against the weight of evidence,[10] is that which the trial

---

years * * * The other grounds advanced by the defendant for reversal are not substantiated, but because the evidence is insufficient to sustain either the jury's verdict of $5,500 or the reduced verdict directed by the court, the judgment is reversed and the cause remanded for a new trial on the cure and maintenance count."

9. In denying a new trial the court said: "The verdict of $100,000 damages was large. But not so large as to shock the court's sense of justice. True, it is larger than I might have awarded. On that ground, however, I may not set it aside." After referring to the nature of the injuries the court went on to say: "Present value of loss of future earnings is substantial—between $60,000 and $70,-000. The amount of general damage rested in the discretion of the jury. In

that domain, reasonable minds could differ."

10. "On such a motion it is the duty of the judge to set aside the verdict and grant a new trial, if he is of opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. The exercise of this power is not in derogation of the right of trial by jury but is one of the historic safeguards of that right." Aetna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350, 352. See the opinion of Taft, J., in Felton v. Spiro, 6 Cir., 78 F. 576, and Montgomery Ward & Co. v. Duncan, 311 U.S. 243, 251, 61 S.Ct. 189, 85 L.Ed. 147.

court frequently exercises in ordering a new trial, or in conditioning denial of a new trial on a remittitur because, in the opinion of the court, the amount of the verdict is against the weight of the evidence. But this power and duty belongs exclusively to the trial judge. It is not for us to give directions in such a case, even although he may have declined to take action, such as we consider we would have done had we been in his place. United States v. Socony-Vacuum Oil Co., supra.[11]

■ We are convinced that even if we assume, as we do, that Cobb v. Lepisto, supra, and Virginian Ry. Co. v. Armentrout, supra, were correctly decided, we cannot here reverse the action of the trial court unless the verdict can be said to be "grossly excessive", or as stated in the Affolder case, "monstrous". We think that the verdict in this case cannot be so characterized.

The judgment is affirmed.

## BONE, Circuit Judge (concurring).

I agree that the judgment in this case should be affirmed but I think that we should also specifically overrule our Lepisto case. The doctrine of that old case lacks support in pronouncements of the Supreme Court and only one Circuit seems to have relied on it as authority for the principle that a federal appellate court may arbitrarily reduce the size of a verdict merely because it regards it as excessive.

## DENMAN, Chief Judge (dissenting).

I dissent. The court's opinion holds that a wrong was done the appellant, in that the verdict is for more money than it owes the appellee. That the amount is *substantially* more than appellant should pay we are agreed. To say that such a substantial sum is not *grossly* excessive and hence deny appellate relief is to me a technical mockery of that justice which we are required to give a litigant by provisions of 28 U.S.C.A. § 2106. That section reads: "The Supreme Court or any other court of appellate jurisdiction may affirm, modify, vacate, set aside or reverse any judgment, decree, or order of a court lawfully brought before it for review, and may remand the cause and direct the entry of such appro-

11. Necessarily juries are often without means of determining the reasonable limits for their verdicts. The victim of an excessive verdict, not the result of passion or prejudice, and not "monstrous" or "grossly excessive", is entitled to relief at the hands of the trial judge. The power of the judge to grant such relief is an essential part of "trial by jury" under our system. As stated in Capital Traction Co. v. Hof, 174 U.S. 1, 13, 19 S.Ct. 580, 585, 43 L.Ed. 873: " 'Trial by jury' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of 12 men before an officer vested with authority to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of 12 men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) *to set aside their verdict, if, in his opinion, it is against the law or the evidence.*" (Emphasis ours)

That it is the duty, as well as within the power of the trial judge to correct an injustice in such cases, was indicated by Judge Parker in adding italics to the following quotation found in Aetna Casualty & Surety Co. v. Yeatts, supra, note 10: ."The matter was well put by Mr. Justice Mitchell, speaking for the Supreme Court of Pennsylvania in Smith v. Times Publishing Co., supra, [178 Pa. 481, 36 A. 296, 298, 35 L.R.A. 819], as follows: 'The authority of the common pleas in the control and revision of excessive verdicts through the means of new trials was firmly settled in England before the foundation of this colony, and has always existed here without challenge under any of our constitutions. It is a power to examine the whole case on the law and the evidence, with a view to securing a result, not merely legal, but also not manifestly against justice,—a power exercised in pursuance of a sound judicial discretion, *without which the jury system would be a capricious and intolerable tyranny,* which no people could long endure. This court has had occasion more than once recently to say that it was *a power the courts ought to exercise unflinchingly.*' "

934

priate judgment, decree, or order, or require such further proceedings to be had as may be just under the circumstances."

To me it seems no exaggeration to apply the term "monstrous" to such a concept of American justice. To put it otherwise, there is no more reason not to set aside a finding of the amount of damages in a verdict which the evidence shows is substantially larger than the actual damage, than there is not to set aside a verdict because the finding of negligence has no substantial support in the evidence.

From our conference it is clear that we can agree on a minimum sum to be remitted from the verdict as a condition for not requiring a new trial. That we should have done.

STEPHENS, Circuit Judge (dissenting).

I dissent. There can be no monetary figure which really compensates for the loss of a limb and for the pain and suffering, both past and in the future, deriving therefrom. And we must view this case from the standpoint of compensation and not from any standpoint of punishment or resentment against the defendant or from sympathy for the plaintiff. While I fully realize the touchiness of a court's interference with a jury's judgment, I cannot believe that our system of jurisprudence places everybody's material fortune, such as our free enterprise enables us to accumulate, at the unbridled whim of any twelve men and women no matter how good and true they may be. There must be some semblance of a basis for estimating the sum of money which one causing an injury must be compelled to pay to put the injured party in as good a fortune as he could be expected to be in had he not suffered the injury, plus, of course, a generous sum for pain and suffering.

Without such a basis reasonably applied I believe no judgment can validly stand. I cannot go along with the so-called "Monstrous" doctrine. It seems to me that by adopting it we give up all attempt to square the judgment with a reasonable basis for its support. I would think a million dollar judgment for the loss of a little finger would be monstrous (though I have none to sell at that figure) but I don't know

about a ten or twenty thousand dollar judgment. No injured person has the right to go to court for sympathy money—all the sympathy in the world is due the plaintiff herein but he is not craving sympathy.

Without an award for pure sympathy or from a corporation prejudice, I cannot figure more than sixty or seventy thousand dollars as justifiable in this case upon any jury instruction setting out a reasonable basis for measurement.

Judge MATHEWS concurs in the dissenting opinions of Chief Judge DENMAN and Circuit Judge STEPHENS.