Virginia MILLER, sole heir of Albert Miller, deceased, Plaintiff,

v.

BOEING COMPANY, a Delaware Corporation, and Lee Day, Defendants.

Civ. No. 2434.

United States District Court
D. Montana,
Great Falls Division.

Sept. 17, 1965.

45. Tr. 1705.

46. Defendants' Exhibit 43.

47. Tr. 1654–1663.

Small & Cummins, Helena, Mont., and Paul J. Murphy, Stanford, Mont., for plaintiff.

Hall, Alexander & Kuenning, Great Falls, Mont., for defendant Boeing Company.

JAMESON, District Judge.

In this action for wrongful death, the jury returned a verdict for the plaintiff widow for $52,700.00. The defendant has moved the court to set aside the verdict and judgment and grant a new trial on either (1) all issues, or (2) on the issue of damages, on the ground that

the verdict is excessive and appears to have been given under the influence of passion and prejudice.

Rule 59, F.R.Civ.P. provides:

"(a) Grounds. A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; * * *."

■ Under this rule it is well settled that a trial judge in his discretion may grant a new trial, or in a proper case, a conditional denial of a new trial on a remittitur, on the ground that the jury's verdict is excessive, if he is of the opinion that the verdict is against the weight of the evidence and is not just. The rule was stated by the Court of Appeals for the Ninth Circuit in Southern Pac. Co. v. Guthrie, 1951, 186 F.2d 926, 932, cert. den. 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343, as follows:

"When the trial court is presented with a motion for a new trial grounded on a claim of an excessive verdict its power to deal with the motion is not limited to questions of law. The same power and duty which the trial judge has to set aside any verdict and grant a new trial when he is of the opinion the verdict is against the weight of evidence, is that which the trial court frequently exercises in ordering a new trial, or in conditioning denial of a new trial on a remittitur because, in the opinion of the court, the amount of the verdict is against the weight of the evidence. But this power and duty belongs exclusively to the trial judge. It is not for us to give directions in such a case, even although he may have declined to take action, such as we consider we would have done had we been in his place." [1]

The same rule has been followed by the Supreme Court of Montana. It was restated in Hurly v. Star Transfer Company, 1962, 141 Mont. 176, 183, 376 P.2d 504, 508, as follows:

"In refusing to grant plaintiff's motion for a new trial, the court approved the amount of damages awarded. Pertinent at this point is Teesdale v. Anschutz Drilling Co., 138 Mont. 427, 357 P.2d 4, 12, wherein this court quoted from Dahlin v. Rice Truck Lines, 137 Mont. 430, 352 P.2d 801, as follows: '" * * * The rule has been established in this state that the amount of damages is committed first to the discretion of the jury, and next to the discretion of the trial judge, who, in passing upon the motion for new trial, may set it aside if it is not just. * * * In Fulton v. Chouteau County Farmers' Co., supra, 98 Mont. 48 at page 74, 37 P.2d 1025, at page 1034, it was said: 'We must bear in mind that, in this class of cases, "there is no fixed measuring stick by which to determine the amount of damages, other than the intelligence of the jury" (McNair v. Berger, 92 Mont. 441, 15 P.2d 834, 839), to whom, of necessity, is allowed a wide latitude, and "so long as we have a system which confides to juries the duty to determine the issues involved in this character of cases and to fix the amount of compensation to be paid unless the result of their deliberation is such as to shock the conscience and understanding, it must be accepted as conclusive" (Autio v. Miller, [92 Mont. 150, 11 P.2d 1039], above); "this court will not substitute its judgment for that of the jury, especially where, as here, the trial court has approved the verdict by denying the motion for a new trial." (McNair v. Berger, supra)' '.' "

"In the Teesdale case, supra, the question was whether or not the

damages were excessive. In this case the question is whether the damages are adequate.[2] However, in both instances the basic consideration is the amount of damages. As has been pointed out, the fixing of the amount of damages is first within the discretion of the jury. Next, in passing upon a motion for a new trial, the amount is left to the discretion of the trial judge who may set it aside if it is not just."

It is, of course, well settled that the discretion of the trial judge is not unlimited and should not be exercised when there is "substantial evidence supporting the verdict". As Judge Murray said in Smith v. Kenosha Auto Transport, D.Mont.1964, 226 F.Supp. 771, 774: " * * * It is only when the amount of the verdict is such as to shock the conscience of the court or to cause the court to believe that it was the result of sympathy, passion or prejudice, or that the jury, in fixing the amount of damages, was motivated by factors that should not have been taken into consideration, that the court may set aside a verdict." (Citing both federal and Montana cases.)

On the other hand, when the evidence, viewed in the light most favorable to the plaintiff, does not sustain the award, or the court is convinced that the jury was misled or did not give due consideration to the law as stated in the court's instructions and rendered a verdict which is not supported by the evidence, the trial judge not only has the power, but also the duty to grant a new trial or condition a denial on a remittitur. Obviously, the power of a trial judge to grant a new trial "must be exercised with due regard for the jury's primary responsibility to fix the amount of the damages. However, responsibility for the amount of damages awarded does not lie exclusively with the jury—its responsibility is primary, but not final. The ultimate responsibility rests with the trial judge who may set a verdict aside.

His power to set aside a verdict as excessive implies that he has a duty to do so when he conscientiously believes that the jury has exceeded the bounds of propriety." Dellaripa v. New York, New Haven & Hartford R. Co., 2 Cir. 1958, 257 F.2d 733, 735.

We turn now to the application of these rules to the instant case.

The instructions on damages (to which neither party excepted) read in pertinent part:

"The burden rests upon the plaintiff to prove by a preponderance of the evidence the elements of her damage. * * *

* * * * * *

"The laws of Montana provide that such damages may be given as, under all the circumstances of the case, may be just. In determining the monetary loss sustained by the plaintiff you may consider the amount which Albert Miller would have earned during his life, had he not died, and contributed to his wife, excluding that portion of his earnings which would have been applied to his own support. You may also consider the pecuniary loss, if any, of the plaintiff on account of being deprived of the comfort, protection, society and companionship of her husband.

"In determining the damages sustained by the plaintiff you may consider Albert Miller's capacity to earn money, his occupation, his probable expectancy of life, his disposition to work, his habits of life and living, the state of his health and physical condition and the fact that earning capacity often diminishes as age advances. You may also consider the age and expectancy of the plaintiff in relation to the age of Albert Miller, the disposition of the deceased, whether he was kindly, affectionate, or otherwise, the degree of intimacy existing between the deceased and his wife, their station in life, and

2. The jury had returned a verdict of $25,000.00 for the death of a 39 year old man.

such other facts shown by the evidence which may throw light upon the pecuniary value of the loss sustained by the plaintiff by reason of being deprived of his comfort, protection, society and companionship. You are not permitted, however, to award any sum for the sorrow, mental distress, or grief that plaintiff may have suffered by reason of the death of Albert Miller.

"You should bear in mind also that in any award based on probable future earnings or contributions, you should allow only the present value of such prospective earnings and contributions. Simply taking the yearly contributions from earnings and multiplying that sum by the life expectancy results in an excessive amount. Rather you should determine the present value of the amount of any yearly loss you find, using such rate of interest as you deem just and reasonable and supported by the evidence."

It was stipulated that the decedent's life expectancy was 15.44 years according to a standard and accepted mortality table. The court gave the standard instruction with respect to the use of mortality tables in determining life expectancy. The jury was further instructed:

"When considering life expectancy, in determining any reasonably certain future damage, the jury will bear in mind, of course, the distinction between entire-life expectancy and work-life expectancy."

The decedent was 60 years of age at the time of his death and was employed by Judith Basin County, Montana. He received as salary from the county $3,573.00 in 1959, $3,638.63 in 1960, $3,798.50 in 1961, and $4,055.50 in 1962. Mrs. Miller testified that in addition he made from $50 to $100 a month on odd jobs. On his income tax return, however, he reported $180.15 in 1961, $13.00 in 1962, and nothing in 1960.

Mrs. Miller, who was 40 years of age earned $112.00 in 1959, $3,700.53 in 1960, $2,605.15 in 1961, and $2,397.50 in 1962. Mr. and Mrs. Miller had no children, but Mrs. Miller had three children by a former marriage. As counsel for plaintiff point out in their brief, there was evidence that Mr. Miller took the children into his home and "treated them kindly, affectionately, as though they were his own". Two of the children are now adults and not living at home. The third was 17 years of age at the time of Mr. Miller's death. No claim is made that the children were heirs of Mr. Miller or entitled to recover damages for his death.

There was evidence that Mr. Miller could retire at age 65, but did not have to. Mrs. Miller testified that he was as "healthy as any man of his age could be", although he had lost a lung in 1928 and had colds once in a while during the winter months. She testified further that a medical bill of $518.50 incurred in 1960 must have been in connection with Mr. Miller's illness.

Mrs. Miller testified that she handled the bank account for the family during Mr. Miller's lifetime. While there was evidence that he was a "family man" of good habits, of a kindly and affectionate disposition, there was no attempt to show any facts which might tend to establish a pecuniary value for the loss of comfort, society and protection.

Plaintiff argues in her post trial brief that if there were added to the annual income of $4,000.00, a minimum of $600.00 per year for odd jobs, making a total of $4,600.00 per year income, based on life expectancy, there might have been an award of $69,000.00 or more, purely for loss of earnings. The same argument was made to the jury, counsel saying in part:

"We do not know, Mr. Miller had he lived might have lived 20 years or he might have only lived 5 years. These are things we do not know, but this is a table that is allowed by the law and the court here to be used here in attempting to arrive at a fair figure of damages. I say that if you take the $4,000 a year and multiply it by the 15 years, with-

out the decimal, or the 15 years shows a figure of $60,000. Testimony is further that in addition to that salary he was earning from odd jobs that he did in addition to this county work between 50 and 100 dollars—if you take the $50.00 for the same period you come up with an additional $9,000 which would make your total of $69,000 and if you take anything more than the $50.00 a month you increase it by that amount. It is just a matter of pure mathematics. Now I say to you in all honesty and fairness this is not, and I do not want to be misconstrued—this is not any absolute yard stick by which to determine these things, that is so far as loss of income. It is given to the jury as one of the yard sticks that they may use in conformity with his Honor's instructions which you will have."

 This argument, advanced both to the court and the jury, ignores two decisive factors: (1) that the amount of any recovery must be limited to the amount that Mr. Miller might reasonably have contributed to Mrs. Miller had he not died, excluding that portion of his earnings which would have been applied to his own support;[3] and (2) the award must be based on the present value of the prospective earnings and contributions.

The proof of damages sustained by the plaintiff is far from satisfactory. Both the proof and the argument of counsel were directed primarily to the decedent's total earnings without reference to the amount of those earnings which Mrs. Miller might reasonably have been expected to receive. There was virtually no proof of the amount of the decedent's personal expenses, and the answers to interrogatories seeking this information were somewhat evasive.

 As in Southern Pac. Co. v. Guthrie, supra, the record is "devoid of evi-

dence as to the probable present worth of the lost earnings". In such a case the court is obliged to refer to matters which it may "notice judicially, such as the probable rate of interest available from safe investments". (186 F.2d at 927).

Moreover, the argument of counsel, both to the jury and court, was predicated entirely on life expectancy, without any reference to work expectancy. In the Guthrie case the court suggested that "there is no justification for speculating either that Guthrie would be able to earn money, or that his employment would have continued beyond age 70 had his injuries not occurred". (186 F.2d at 927). It is entirely unlikely that Mr. Miller would have continued to earn the same salary until he was 75 years old, even though he might not have retired at age 65.

There is no specific proof of decedent's personal expenses, aside from the medical payment of $518.00 in 1960. Particularly in view of Mrs. Miller's own earnings, it seems unlikely that Mr. Miller would have contributed more than half of his earnings toward her support.

The present value of $2,000.00 per year, calculated at four per cent, for 15.44 years is approximately $23,166.00; the present value of $2,500.00 per year is approximately $28,958.00; and the present value of $3,000.00 per year is approximately $34,750.00. If a three per cent rate were used, the amounts would be $24,667, $30,833, and $37,000 respectively. It would appear that the four per cent rate would be more realistic under the current market.

If the award were based on work expectancy rather than life expectancy and the earnings were computed to age 70, as suggested in Southern Pacific Company v. Guthrie, the present worth of $2,000 per year, calculated at four per cent, would be approximately $16,517.10; the present worth of $2,500 per year would be approximately $20,646.37; and

3. It must be kept in mind that this action was not prosecuted under the survival statute, but rather under the so-called death statute and is limited to Mrs. Miller's loss.

the present worth of $3,000 per year would be approximately $24,775.65.

In their post trial brief counsel for plaintiff argued that "Mrs. Miller and her children certainly sustained a substantial loss in the form of comfort, protection, society and compaionship when Mr. Miller was killed". Counsel made the same argument before the jury, and the court would not quarrel with this conclusion. Counsel did not in either argument, however, relate the loss to "pecuniary value".

In Mize v. Rocky Mountain Bell Tel. Co. et al., 1909, 38 Mont. 521, 535, 100 P. 971, 974, the Supreme Court of Montana held that the "pecuniary loss, if any, of the widow on account of her being deprived of the comfort, protection, society and companionship of her husband" was recoverable. The court followed prior decisions of California where the statute is similar to that in Montana. The California rule was discussed at some length in Ure v. Maggio Bros. Co., 1938, 24 Cal.App.2d 490, 75 P.2d 534, 538, where the court said in part:

"But while loss of society, comfort, and protection may be an element of the injury sustained by the statutory beneficiaries, it is only the pecuniary, and not the sentimental, value of such loss which may be taken into consideration in the assessment of damages. Nothing can be recovered as a solatium for wounded feelings."

The California court also quoted from the prior California case of Dickinson v. Southern Pacific Co., 172 Cal. 727, 158 P. 183, 184, 185, where the court said:

"It is not possible to measure in exact terms of money the loss which a surviving husband, wife, or child may have sustained through being deprived of the comfort and society

of the deceased spouse or parent. For this reason, some play is allowed to the discretion of the jury by the provision of section 377 that such damages may be allowed as under all the circumstances of the case may be just.[4] But, in fixing the amount, the jury is always bound by the fundamental rule that pecuniary damage is the limit of recovery, and the amount allowed must bear some reasonable relation to the pecuniary loss shown by the evidence."

I cannot escape the conclusion that both counsel for plaintiff and the jury have used the wrong yardstick in computing damages in this case, and that viewing the evidence in the light most favorable to the plaintiff, the award exceeds the maximum permissible under the applicable law and instructions of the court and accordingly "is not just".

■ Particularly in view of the unsatisfactory proof with respect to the decedent's personal expenses and the pecuniary loss of society, comfort, protection and companionship, it is impossible to compute the damages with mathematical exactness. While it would be proper to set aside the verdict and permit another jury to resolve either all issues or the issue of damages, I believe justice would be served by a denial of the motion on condition of a remittitur.[5]

■ Giving due consideration to the decedent's earnings, the probable amount the plaintiff would receive therefrom, the present worth of the contributions plaintiff could reasonably anticipate, the life and work expectancy of the decedent, and the pecuniary loss of comfort, society, protection and companionship, I conclude that any recovery in excess of $37,500 would not be justified.

Accordingly, it is hereby ordered that the motion of the defendant for a new trial is granted, unless the plaintiff shall

---

4. The same provision is contained in R.C.M.1947, § 93–2810.

5. As the Supreme Court of Montana well said in Griffin v. Chicago, etc., Ry. Co., 1923, 67 Mont. 386, 407, 216 P. 765, 772,

"We favor an end to litigation, and dislike exceedingly to compel expenditure of further time and expense in a determination of the reasonable amount of damages to which the plaintiff is entitled."

file her consent in writing with the clerk of court to a reduction of the amount of the judgment to $37,500 within 15 days from this date, in which event the motion for a new trial is denied.