GRONEMAN et al. v. INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 354.

No. 3916.

United States Court of Appeals
Tenth Circuit.

Nov. 4, 1949.

Allan E. Mecham, Salt Lake City, Utah (Edward W. Clyde and ·Woodrow D. White, Salt Lake City, Utah, were with him on the brief), for appellants.

A. Wally Sandack, Salt Lake City, Utah, and Louis Sherman, Washington, D. C., (Delbert M. Draper, Salt Lake City, Utah, and Philip R. Collins, Washington, D. C., were with him on the brief), for appellee.

·Before BRATTON and HUXMAN, Circuit Judges, and RICE, District Judge.

HUXMAN, Circuit Judge.

This is an appeal from the judgment of the United States District Court for the District of Utah dismissing appellants' action for want of jurisdiction. Lynn Groneman and Lavar Groneman, doing business as Groneman and Company, the appellants, instituted this action under Section 303(b) of the Labor Management Act of 1947, 29 U.S.C.A. § 187(b). The action was brought to recover alleged damages re-

sulting from a stoppage of construction work caused by the refusal of appellants' employees to cross a picket line mantained by appellee between July 22 and August 4, 1948, at a project for the construction of a school building in Provo, Utah. In substance, the complaint alleged that appellants were engaged in commerce; that appellee engaged in a secondary boycott against them in violation of 29 U.S.C.A. § 187(a) (1), to enforce a labor dispute it had with Lloyd Engle.

The facts about which there is no dispute are these. Provo City School District of Provo, Utah, undertook the construction of two school buildings. Only the building known as Northeastern Elementary School is involved in the controversy and reference will be made to it alone. The Board entered into a contract with appellants for the carpentry work necessary for the construction of this building. At the same time, the Board entered into a separate and independent contract with Lloyd Engle for the electrical construction and equipment work for the building. As far as the record reveals, there was no' relationship or privity of contract or connection between appellants' work and that of Engle. They were both independent contractors, each having a separate contract for their respective part of the construction from the Board. Engle was a small contractor. All his work under the contract was done by himself, his son, and one other person whom he employed. None of them belonged to the Union. The appellee Union therefore considered Engle unfair to organized labor.

While appellants were engaging in preliminary work of constructing forms for pouring cement for the foundation walls, and before Engle had begun any work under his contract, appellee placed one picket on the job. He was placed some distance from the job and carried the following sign:

"This job unfair to Local 354, I. B E. W., A. F. of L."

The picket entered in no controversy or conversations with anyone on the job. Neither appellants nor Engle nor anyone else was denied free, uninterrupted access to the premises. As a result of this picketing, appellants' employees, who were members of the carpenter's union, left the job for a period of nine working days.

The court found that the picketing was directed against Engle and the School Board. Thus, the court stated:

"It is perfectly clear, from all the evidence, that that sign and the inscription pointed to Mr. Engle, because of his relationship as I have expressed it. Now, as I view that situation, this was a challenge of the right of this School District to enter into a contract with Mr. Engle.

"At that time the only people that worked upon this job were these carpenters, constructing these forms for the purpose of pouring cement. Mr. Engle wasn't there, nor did he have any place there and probably would not have for quite a while. So that it is quite apparent to me that this challenge by this sign was a direct challenge against the School Board. The effect it had upon the plaintiffs was incidental to that challenge."

The court's conclusion that commerce was not involved was predicated on its findings that during the nine days the picketing was going on, no material used on the job was moving in interstate commerce because the only material being used was timber for forms, and this was purchased from local merchants from stock piles on hand.

As stated, the trial court, in effect, held that the picketing was directed against the Board and Engle and that the effect upon Groneman was incidental to that dispute. Relying on this, appellee argues that there was therefore no secondary boycott against Groneman. The court, however, did not base its conclusion that it lacked jurisdiction upon such findings. It based its conclusion on its finding that Groneman at the time was not engaged in commerce. Since we agree with the trial court in this, it is not necessary to pass upon appellee's contention that there was no secondary boycott directed against Groneman.

 Groneman's operations were essentially local in character. As far as the record reveals, he was engaged entirely in

constructions within the State of Utah consisting of various types of buildings. But that in itself would not prevent his operations from coming within the provisions of the Act if there was in fact an intimate and close association between his local business and commerce so that what affected his business would have an effect upon commerce. In United Brotherhood of Carpenters, etc., v. Sperry, 10 Cir., 170 F.2d 863, and Slater v. Denver Building and Construction Trades Council, 10 Cir,. 175 F.2d 608, we held that Congress not only intended to regulate activities affecting commerce itself, but also activities which in isolation might be deemed to be purely local, yet when taken in connection with interstate business would affect commerce. Such activities are no less subject to the provisions of the Act than are those that directly affect commerce.[1]

Since Groneman is operating a purely local business in no wise connected with anyone engaged in commerce, it follows that he shares no such close and intimate connection with commerce as would bring his operations within the ambit of the Act so that an interruption of his activities would affect commerce.

Appellant, however, contends that he was directly engaged in commerce under the contract with the Board in that he was purchasing material in commerce for this job. Whether he was so engaged is not free from doubt. On direct examination he testified that some material for this job was purchased in interstate commerce, although his cross examination materially weakened his direct testimony and would warrant a finding that in fact no material was purchased in interstate commerce for this project. But since the court made no finding with respect to the matter, we give him the benefit of the doubt and

assume that he did purchase some material for this job in commerce. Giving him the benefit of all doubts in the testimony, it appears that the amount of the material so purchased was negligible. He testified that he purchased material for the two buildings in the total amount of $30,000.00, and that of this amount about 40% was received in interstate shipments. Dividing this equally between the two buildings, only about $6,000.00 of such material came to this job. There is nothing in the record indicating that there were labor troubles at the other building or that construction was in progress there at the time so that that building may be eliminated from consideration. Neither is there any evidence that he had other contracts or contracts in contemplation that might be affected by the dispute.

Assuming then that this labor dispute was unlawful and that it interrupted commerce to the extent of $6,000.00, can it be said that this has such an effect upon commerce as is sufficient to give the court jurisdiction under the Act.

In National Labor Relations Board v. Fainblatt, 306 U.S. 601, 607, 307 U.S. 609, 59 S.Ct. 668, 672, 83 L.Ed. 1014,[2] the Supreme Court said that considering the Act in light of its purpose and circumstances in which it must be applied, it found "no basis for inferring any intention of Congress to make the operation of the Act depend on any particular volume of commerce affected more than that to which courts would apply the maxim de minimis."

█ Considered in the light most favorable to appellant, the impact of this labor dispute upon commerce, in any event, is so trifling and microscopic as to bring it within the above pronouncement by the Su-

1. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Santa Cruz Co. v. National Labor Relations Board, 303 U.S. 453, 58 S.Ct. 656, 82 L.Ed. 954; National Labor Relations Board v. Sunshine Mining Co., 9 Cir., 110 F.2d 780; National Labor Relations Board v. Crowe Coal Co., 8 Cir., 104 F.2d 633.

2. Also see the following cases: Gerdert v. Certified Poultry & Egg Co., D.C., 38 F. Supp. 964, 970; Binney & Smith Co. v. United Carbon Co., D.C., 37 F.Supp. 778, 779; Wood v. Central Sand & Gravel Co., D.C., 33 F.Supp. 40, 44; National Labor Relations Board v. Cowell Portland C. Co., 9 Cir., 108 F.2d 198, 201.

preme Court and requires the application of the de minimis doctrine. For this reason, we think the court correctly concluded that the controversy fell outside the purpose and provisions of the Act and that the court was without jurisdiction.

Affirmed.