LOCAL UNION NO. 420 OF THE UNITED ASSOCIATION OF JOURNEYMEN AND APPRENTICES OF THE PLUMBING AND PIPE FITTING INDUSTRY of The United States and Canada by A. McHenry, Trustee Ad Litem,

and

A. McHenry, as a representative and on behalf of the members of Local Union 420 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada,

v.

CARRIER CORPORATION, 12 South 12th Street, Philadelphia, Pa.

Civ. A. 16598.

United States District Court
E. D. Pennsylvania.
April 14, 1955.

Louis H. Wilderman, Philadelphia, Pa., for plaintiffs.

Jacoby & Maxmin, Philadelphia, Pa., for defendant.

FOLLMER, District Judge.

This is an action instituted by Local Union No. 420 of the United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry of the United States and Canada (hereafter referred to as "Pipefitters") by A. Mc-

Henry, Trustee Ad Litem, and by A. McHenry as a representative and on behalf of the members of said Local Union No. 420, against Carrier Corporation (hereafter referred to as "Carrier").

The action purports to be one for damages under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) the pertinent portion of which reads as follows:

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

Section 301(b) of said Act, 29 U.S.C.A. § 185(b) furthermore provides, in part, as follows:

" * * * Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. * * * "

The Complaint sets forth, inter alia, that on or about May 1, 1952, Air Conditioning, Heating and Plumbing Employers Association, of which defendant is a member, negotiated a collective bargaining agreement with Local Union No. 420, Pipefitters, which agreement was accepted by defendant and is binding on it.[1] That Article VI, Section 3, of the said collective bargaining agreement provides as follows:

"It is further understood and agreed that the piping contractor shall be responsible for all piping and equipment which is part of the work of the United Association and shall be handled and set by Local Union No. 420 Journeymen.

"The Employer reserves the right to sublet work to a rigging contractor with the provisions that members of Local 420 will do the work. In addition, the Rigging Contractor may supply one (1) man as an overseer."

The Complaint further states that in or about the month of January 1954, defendant contracted to install certain compressors and other refrigerating equipment in the Fidelity Philadelphia Trust Building, Philadelphia; and that in violation of the provisions of said collective bargaining agreement, particularly Article VI, Section 3 thereof, supra, defendant assigned the handling and setting of these compressors and other refrigerating equipment to Frank Hake, knowing that Hake would assign the handling and setting of the equipment to members of another labor organization rather than members of plaintiff organization.

The Complaint finally avers:

"9. Because of this breach of its collective bargaining Agreement, the plaintiffs have suffered a loss of wages for all the hours necessary to perform the work of handling and setting of the compressors and refrigerating equipment.

"10. The defendant has proceeded with this violation of its collective bargaining Agreement to the damage of the plaintiffs and despite demand by the plaintiffs that the defendant comply with its collective bargaining Agreement.

"Wherefore, plaintiffs demand judgment against the defendant in the sum of Ten Thousand ($10,000.-00) Dollars with interest from the date of filing this Complaint, together with the costs of this action."

Defendant moved to dismiss assigning the following reasons:

1. Action based on illegal collective bargaining agreement, citing particularly Article VI, Section 3 thereof.

2. In the alternative, if the said collective bargaining agreement is valid

---

1. Copy of contract was attached to the Complaint.

28

and effective, the provisions of Article II, Section 2, make arbitration of "all disputes of any nature whatsoever" mandatory.

3. Neither Local Union No. 420 by A. McHenry, Trustee Ad Litem, nor A. McHenry as a representative and on behalf of the members of Local Union No. 420, is a proper party plaintiff.

4. (a) Lack of jurisdictional amount.

(b) No diversity of citizenship.

(c) Not a cause of action arising under the Act of June 23, 1947, 61 Stat. 156, 29 U.S.C.A. § 185, therefore no Federal jurisdiction over the subject matter.

5. In reality the Complaint sets forth a jurisdictional dispute between two labor unions, therefore the action is merely a ruse to give jurisdiction to the Federal Court, thus usurping the duties and powers of the National Labor Relations Board.

6. Complaint fails to state a claim against defendant upon which relief can be granted.

Technically, this is a claim for money damages, but in reality it is a rehashing of a jurisdictional labor dispute at the instance of Pipefitters, apparently a persistent litigant.

A little chronology of the extended series of events in this jurisdictional labor dispute may be helpful to a clearer understanding of the instant case.

As the result of unfair labor practice charges alleging violations of Section 8(b) (4) (D) of the National Labor Relations Act as amended June 23, 1947, 61 Stat. 136 et seq., 29 U.S.C.A. § 158, hereafter called the "Act") filed by Riggers and Machinery Movers Local Union No. 161 (hereafter called "Riggers") on February 26, 1953, with the National Labor Relations Board (hereafter called the "Board") against Pipefitters and involving the jurisdictional dispute over rigging work, the Board conducted a hearing pursuant to Section 10(k) of the Act, 29 U.S.C.A. § 160(k) and issued its Decision and Determination of Disputes in said matter on April 9, 1954. The Board had before it contract of Local No. 420 (Pipefitters) with the Air Conditioning, Heating and Plumbing Employers Association of Philadelphia, Pa., (hereafter called "Philadelphia Association") which was executed on May 1, 1952, and which expired on April 30, 1953. This contract contained, inter alia, a provision that all rigging work in the Philadelphia area would be done by Pipefitters.

In defending the charge filed against them before the Board, Pipefitters relied upon Article VI, Section 3 of the Agreement of May 1, 1952, hereinabove set forth, and which, incidentally, is the crutch on which they rely in the instant suit. The Board found that the contract was "patently unlawful", and further stated:

"* * * Nor can Article VI, Section 3, upon which the Pipefitters' defense turns, be separated from these other Articles. Article VI, Section 3 is an integral part of the fabric of illegality which runs through the entire contract. Indeed, Article VI, Section 3 is itself illegal insofar as it provides that the undisputed rigging work will be done only by members of Local 420. We will not, as a matter of policy, allow such a contract to determine the dispute with regard to York's assignments in the Pipefitters' favor."

The Board finally determined that Pipefitters Local No. 420, and its agents,

"* * * are not and have not been lawfuly entitled to force or require any employer in the Philadelphia area to assign the rigging work on any equipment to members of Locals * * * 420 rather than to members of Riggers & Machinery Movers, * * *."

Thereafter, on April 21, 1954, the Regional Director of the Board filed in this Court petition for an injunction under Section 10(l) of the Act, seeking to restrain Pipefitters from certain activities "where an object thereof is to force or require Hake (subcontractor named in the instant complaint) * * *

or any other employer in the Philadelphia area, to assign the rigging work or any equipment, pipes, or material to employees who are members of respondent (Pipefitters) rather than to employees who are members of or are represented by Riggers * * *." [2]

On May 5, 1954, the Court filed Findings of Fact and Conclusions of Law, determining, inter alia, that there was "reasonable cause" to believe the charge of unfair labor practice true, and enjoined Pipefitters from "inducing or encouraging the employees of * * * Hake, or of any other employer, to engage in a strike or a concerted refusal in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services, where an object thereof is to force or require Frank W. Hake, * * * or any other employer or association of employers in the Philadelphia area, to assign the rigging work on any equipment, pipe or material to employees who are members of or represented by Riggers and Machinery Movers Local Union 161 * * *," pending the final adjudication by the Board of the matters involved.

Pipefitters appealed and the Court of Appeals affirmed the action of the District Court, holding that the latter did not abuse its discretion in enjoining Pipefitters from engaging in the future in practices on other jobs in the Philadelphia area like those employed on the particular job involved in the injunction proceeding, and concluded that the temporary injunction as awarded should stand and should not be limited as requested by Pipefitters to the latter's actions on that particular job. [3]

The instant action was filed April 2, 1954, prior to the injunction proceeding in the District Court.

Although res adjudicata does not apply to the decisions of administrative officers and boards, [4] nevertheless, in deciding law questions, courts may properly attach weight to the decision of points of law by an administrative body having special competence to deal with the subject matter. Dobson v. Commissioner of Internal Revenue, 320 U.S. 489, 502, 64 S.Ct. 239, 88 L.Ed. 248.

The very thing contemplated by Article VI, Section 3 of the Collective Bargaining Agreement upon which plaintiff leans is that specifically denoted an unfair labor practice by Section 8(b) (4) (D) of the Act. The Board not only found this particular section of the contract "illegal insofar as it provides that the undisputed rigging work will be done only by members of Local 420" but that the "fabric of illegality" ran "through the entire contract."

Having in mind the finding of the Board, with which I am in complete accord, and the subsequent injunctive proceeding in this Court with its affirmance by the Court of Appeals, there is not the slightest doubt in my mind but that the motion to dismiss must be granted because the action is based upon an illegal and unenforceable contract. [5]

I am also of the opinion that the Complaint has been instituted by improper plaintiffs. Were we not here met with the insuperable barrier of an illegal contract, and assuming we were dealing with a legal collective bargaining agreement, plaintiffs as an entity, Section 301 (b), Act of June 23, 1947, 61 Stat. 156, might have a right of action against this

---

2. Civil Action No. 16,722, D.C.E.D.Pa.

3. Schauffler v. United Association of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry of the United States and Canada, Local 420 AFL, 3 Cir., 218 F.2d 476.

4. Grandview Dairy, Inc., v. Jones, D.C. E.D.N.Y., 61 F.Supp. 460.

5. The injunctive action obviously was directed at a possible continuance of acts considered both by the District Court and the Court of Appeals to constitute unfair labor practice. In the instant case, Pipefitters, the offending Union in the injunctive proceeding, is basing its claim on an alleged refusal by Carrier to be a party to that very same unfair labor practice."

defendant, if only for nominal damages. Here, however, plaintiffs are not suing as an entity as provided by the Act but by a Trustee Ad Litem.

■ Secondly, the Complaint avers that "the plaintiffs have suffered a loss of wages for all the hours necessary to perform the work of handling and setting of the compressors and refrigerating equipment." There is no doubt this claim is made on behalf of individuals, certainly the Union can earn no wages. The impropriety of this phase of the Complaint is, I think, clearly shown by the opinion of the Supreme Court in Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 75 S.Ct. 488.

The motion to dismiss will be granted.