**PLUMBERS & STEAMFITTERS UNION, LOCAL NO. 598, Appellant,**

v.

**W. C. DILLION, Appellee.**

No. 15729.

United States Court of Appeals
Ninth Circuit.

May 26, 1958.

Vance & Peterson, J. Duane Vance, Seattle, Wash., for appellant.

Gladstone & Day, Wayne Gladstone, Richland, Wash., for appellee.

Before HEALY, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellee Dillion, a member of Plumbers & Steamfitters Union, Local 598, commenced operations as a pipe fabricator and pipeline contractor in early September, 1954. Pursuant thereto he acquired some equipment, rented a shop in Pasco, Washington, contacted prospective contractors with whom he sought to do business, and sought to procure a contract with the appellant for the supply of labor for his business. Over the apparent objections of certain other contractors and with some reluctance on the part of union officials, Dillion received his labor contract on November 22, 1954. Immediately thereafter he entered into a contract with Lewis Hopkins, Inc., a corporation, for the performance of pipe fabrication work as a sub-contractor for Hopkins. Dillion sought to obtain men from Local 598, but despite all efforts was dispatched only two workers, one of whom worked only one day and then either quit or was pulled off the job. Hopkins terminated Dillion's contract for failure to provide the labor essential to performance. Dillion discontinued his business enterprise on December 8, 1954 and sold his equipment. Inferentially, the refusal of Local 598 to supply labor caused the loss of the Hopkins contract and reasonably could be found to have compelled the discontinuance of appellee's business.

Appellee instituted this action in the District Court for the Eastern District of Washington under the provisions of § 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a), alleging breach of contract by Local 598 by its refusal to supply labor to appellee; and under 15 U.S.C.A. § 15, alleging a conspiracy between Local 598 and certain employers to violate the antitrust laws. The antitrust cause of action was dismissed at the end of plaintiff's case in chief and no appeal is taken therefrom. No motion to strike the evidence bearing on the antitrust conspiracy count was made. The court below fully instructed the jury on the requirements for a breach of contract action. No complaint is made of this procedure. The jury returned a verdict for plaintiff in the amount of $40,000. Defendant's motion for a new trial was denied, subject to plaintiff's acquiescence in remittitur of the verdict to $30,000. Plaintiff consented to the remittitur and judgment was entered accordingly. This Court has jurisdiction of defendant's timely appeal. 28 U.S.C. § 1291.

Defendant union attacks the judgment on three grounds: First, that appellee was not an employer engaged in an industry affecting commerce within the

meaning of 29 U.S.C.A. § 185(a) so as to confer jurisdiction upon the federal courts; second, that the contract sought to be enforced was illegal, void and unenforceable by either party in that it contained a closed shop provision in violation of 29 U.S.C.A. § 158(a) (3); and third, that the judgment is grossly excessive in amount, the result of passion, bias, and prejudice on the part of the jury. We shall consider each of these alleged errors.

### I. Federal Jurisdiction

§ 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. § 185(a) provides:

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organization, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

■ Appellant contends that the *employer* must be engaged in an industry affecting commerce in order to invoke the jurisdiction granted by this section. An equally compelling argument can be made that it is sufficient if only the "labor organization represents employees in an industry affecting commerce." See Textile Workers v. Lincoln Mills, 1957, 353 U.S. 448, 451, 77 S.Ct. 912, 915, 1 L.Ed.2d 972. However, we need not concern ourselves with this difficult jurisdictional question, for it is clear from the admissions of defendant's answer and from the undisputed evidence presented at the trial that this case falls precisely between both horns of the potential dilemma.

Plumbers and Steamfitters Union, Local 598, was, by its answer, "representing employees in an industry affecting commerce as defined in Sec. 185, Title 29 USC." Further, there was credible testimony to the effect that the area served by the local included counties in both Washington and Oregon and that men from the Pasco office of Local 598 were often dispatched across state lines for work within their special competence. We have no doubt that Local 598 represented employees in an industry affecting commerce.

■ On the other hand, Dillion, the employer, under his contract with Hopkins, was to do pipe fabrication upon a $125,000 project under construction by Hopkins at the Hanford Engineering Works of the Atomic Energy Commission. In this context, the pipe fitting industry itself might well be characterized as an industry affecting commerce and Dillion, as a member of that industry, would similarly qualify. Cf. N.L.R.B. v. Denver Bldg. & Const. Trades Council, 1951, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284; N.L.R.B. v. Reed, 9 Cir., 1953, 206 F.2d 184. But that too is not a decision necessary to this case, for Dillion himself was engaged in commerce for the purposes of the Hopkins contract. His contractual obligations required the unloading of steel pipe from interstate railroad cars, fabricating that pipe, and laying it some 700 feet into the Columbia River. There is no dispute that the 66 inch steel pipe came from outside the state of Washington. Dillon's was a very small business, but mere size alone cannot defeat the interstate aspects of Dillion's contract with the Hopkins firm. Compare Groneman v. International B. E. W., 10 Cir., 1949, 177 F.2d 995. As to the contract with Hopkins and the labor to be supplied by Local 598 to fulfill that contract, Dillion was an employer engaged in an industry affecting commerce within the jurisdictional limitations of 29 U.S.C.A. § 185(a).

### II. Illegality of the Contract

Dillion's labor contract with Local 598 provided, *inter alia:*

"Section 3. The employers agree to hire all employees covered by this agreement from and through the unions and to retain in its employ only members in continuous good standing in the unions. This is to include foreman, general foremen and superintendents.

"The employers agree to forthwith discharge any employee upon written notice from the union that such employee is not in good standing in the union."

■ Appellee urges that this provision can be interpreted as a union shop agreement and therefore not contrary to 29 U.S.C.A. § 158(a) (2, 3). With this contention we cannot agree. The terms of section 3, as quoted, are too clear to admit of argument that the union did not seek to obtain the benefits of a provision now declared by Congress to be an unfair labor practice. Having compelled the employer to enter into this contract, can the union now avoid the consequences of its breach because of the presence of a term which would give rise to administrative action by the National Labor Relations Board? See N.L.R.B. v. Alaska Steamship Co., 9 Cir., 1954, 211 F.2d 357; compare National Labor Relations Bd. v. Rockaway News, 1953, 345 U.S. 71, 77, 73 S.Ct. 519, 97 L.Ed. 832.

■ The mere existence of the closed shop provision is not, here, a basis for criminal action against the signers, Lewis v. Jackson & Squire, D.C., W.D.Ark. 1954, 86 F.Supp. 354; nor was this a clause causing the "fabric of illegality" to run through the entire contract, Local Union No. 420 v. Carrier Corp., D.C.E.D. Pa.1955, 130 F.Supp. 26; Local No. 234 of the Plumbers' Union v. Henly & Beckwith, Inc., Fla.1953, 66 So.2d 818. The breach of contract may, as here, also be the source of an unfair labor practice cognizable by the N.L.R.B., but the District Court is not thereby deprived of jurisdiction over the private action for breach. Independent Pet. W. v. Esso Stand. Oil Co., 3 Cir., 1956, 235 F.2d 401.

The union's agreement to supply labor was not the *quid pro quo* for the closed shop provision. Whether the duty to furnish labor was a collateral oral agreement or an implied term of the contract is unclear, but the jury was instructed that the contract so provided and no complaint of that instruction is made. The closed shop provision was only one of many obligations imposed upon the contractors and it is most unrealistic to assert now that without that provision no contract would have been made or that the union would not have agreed to supply labor to Dillion.

■ We therefore are of the opinion that the questionable clause is severable from the contract as a whole. Appellee is not relying on the allegedly illegal provision of the contract. While we express no opinion on the illegality of the provision in this type of an action, it is clearly the law that an illegal clause which is severable from the remainder of the contract is no bar to enforcement of the other contractual provisions. The evidence amply sustains the jury's conclusion that Local 598 failed and refused to supply labor as required by its contract. That refusal caused appellee to forfeit his contract with Hopkins and effectually forced him out of business. An actionable claim for damages reasonably flowing from defendant's breach resulted.

### III.  Damages

■ Giving appellee every benefit, he was actually "in business" for a period not in excess of 3 months. If we accept as true every item of expense detailed by appellee's testimony, including his own estimate of the cost and extent of travel at 10 cents per mile, his own estimate of time he spent, and its value at $5.00 per hour, the loss on his equipment, his rent, the electricity, telephone service, and the highest estimate of profit lost through his inability to perform the Hopkins contract, we arrive at damages of slightly under $11,000. Appellee admits that the remaining $19,000 of the remitted judgment must be attributable to the reasonable value of the appellee's business as a going concern.

■■ The court below correctly instructed the jury that they could not consider as an element of damages supposed or claimed profits from future contracts. But such future profits and the value of a going concern, which includes goodwill, over and above the value of its assets are not the same thing. Appellee was in business only 3 months; he devoted himself during that period, accord-

ing to his testimony, to only three endeavors; making business contacts and obtaining the labor contract and attempting to perform the Hopkins contract. In the latter he was manifestly unsuccessful, being discharged within five days for his inability to supply labor. This contract quite clearly gave rise to no intangible good will item of value. However, appellee testified to having contacted no less than nine prospective sources of pipe fabricating work. It is conceivable that these contacts provided appellee's business with an intangible asset capable of valuation by a fair-minded jury weighing all the evidence. But it is inconceivable to value such contacts, nebulous as they were, at $29,000, (as we assume the jury did) or at $19,000 (as did the court below). Such a verdict can only be explained as having been inspired by the conspiracy evidence left unstricken from the record. A verdict based on the bias, passion, or sympathy of the jury cannot be permitted to stand. Ford Motor Co. v. Mahone; 4 Cir., 1953, 205 F.2d 267; Southern Pacific Co. v. Guthrie, 9 Cir., 1951, 186 F.2d 926. The court below recognized this factor and reduced this element of damage from $29,000 to $19,000. Beyond the obvious bias or passion, a verdict which can be characterized as grossly excessive or monstrous will not be sustained on appeal. Siebrand v. Gosnell, 9 Cir., 1956, 234 F.2d 81, 94; Southern Pacific Co. v. Guthrie, supra.

 Although the occasion to do so is rare, it is within the power of this tribunal to review a judgment claimed to be excessive and, if necessary, to vacate that judgment. Baldwin v. Warwick, 9 Cir., 1954, 213 F.2d 485; Southern Pacific Co. v. Guthrie, supra; 28 U.S.C. § 2106; compare Garrett v. Faust, 3 Cir., 1950, 183 F.2d 625. We will not, however, substitute our opinion of the value of appellee's business, as a going concern, for that of the trier of fact or the trial judge. It is not for us to review the entire record and make a determination of the total damages suffered, including damages for the loss of appellee's going business, by appellant's unwarranted breach of contract. Baldwin v. Warwick, supra. It is sufficient that we are of the opinion that the judgment as finally entered was grossly excessive.

The judgment is therefore vacated and remanded for further proceedings on the issue of appellee's damages reasonably caused by appellant's breach of contract. The District Court is at liberty, however, to condition the granting of a new trial upon a further remittitur of such percentage of the sum of $19,000, indicated herein to be excessive, as its best judgment upon consideration now demands. If such course should be followed by the court and acquiesced in by the plaintiff-appellant, the new amount would be added to the sum of $11,000 for judgment. Baldwin v. Warwick, supra; Southern Pacific Co. v. Guthrie, supra; Cobb v. Lepisto, 9 Cir., 1925, 6 F.2d 128.