Emil A. SCHLECHT, E. B. Weber, Norman L. Buckner, Robert J. Caley, Carl M. Halvorson, Eric Hoffman, J. M. Steinmuller, Jr., and Ralph Pierson as Trustees for the Oregon-Washington Carpenters-Employers Health and Welfare Trust Fund and as Trustees for the Oregon-Washington Carpenters-Employers Pension Trust Fund, Plaintiffs,

v.

Bernard HIATT, Defendant.

Civ. No. 65-377.

United States District Court
D. Oregon.

Feb. 23, 1967.

**646**

Ronald B. Lansing, Bailey, Swink, Haas, Seagraves & Lansing, Portland, Or., for plaintiffs.

Henry J. Camarot, Sanders, Lively & Camarot, Springfield, Or., for defendant.

## OPINION AND ORDER

SOLOMON, Chief Judge:

Plaintiffs, trustees of the Oregon-Washington Carpenters-Employers Pension Trust Fund and the Oregon-Washington Carpenters-Employers Health and Welfare Fund, seek to recover contributions, liquidated damages and attorney's fees from the defendant.

Defendant, a contractor specializing in building homes, contends that this Court lacks jurisdiction under § 301 Labor-Management Relations Act, 29 U.S.C.A. § 185(a), and that he has incurred no liability to the Funds.

29 U.S.C.A. § 185(a) provides:

"Suit for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

The phrase "industry affecting commerce" is defined in § 501 of the Act, 29 U.S.C.A. § 142(1), as follows:

"The term 'industry affecting commerce' means any industry or activity in commerce or in which a labor dispute would burden or obstruct commerce or tend to burden or obstruct commerce or the free flow of commerce."

At a joint hearing of this and other cases involving employee benefit trust funds, I held that this Court has jurisdiction in cases brought by the trustees to collect unpaid contributions.

■ Defendant has requested me to reconsider this ruling because here, unlike most cases, the defendant purchased all of his supplies and performed all of his contracts in Oregon and did not do any work either as a contractor or subcontractor for any company engaged in interstate commerce.

Defendant admitted that from October, 1963, to October, 1965, he purchased $300,000.00 worth of supplies for use in his construction business and although he may have purchased all of his supplies locally, the plumbing and electric fixtures and supplies were manufactured outside of Oregon.

I find that defendant's activities "affect[s] commerce" and that a labor dispute in his operation would "tend to burden the free flow of commerce." National Labor Relations Board v. Denver Building & Construction Trades Council, 341 U.S. 675, 71 S.Ct. 943, 95 L.Ed. 1284 (1951); Plumbers & Steamfitters Union, Local No. 598 v. Dillion, 9 Cir. 1958, 255 F.2d 820; and National Labor Relations Board v. Reed, 9 Cir., 1953, 206 F.2d 184.

In 1962, the union and employer organizations executed a Carpenters Labor Agreement for 1962, 1963, and 1964. They also executed a Trust Agreement. Under the Labor Agreement, employers agreed to pay into both a Pension Trust Fund and a Health and Welfare Trust Fund 15¢ an hour after April 14, 1963, for all their employees. The Trust

Agreement provided for liquidated damages and attorney's fees in legal actions against delinquent employers. The Pension and Health and Welfare provisions in the 1965 Carpenters Labor Agreement and Trust Agreement are identical to the ones in the 1962 agreements.

The defendant was not a member of an employer organization and he did not sign either the 1962 Labor Agreement or the Trust Agreement, but on October 4, 1963, he signed a Building Trades Agreement containing the following pertinent provisions:

"Whereas the Employer, * * * and the Council, on behalf of its affiliated unions, parties to this agreement, desire to promote the settlement of labor disputes by conference, * * it is therefore agreed by and between the parties hereto as follows:

* * * * * *

"II.

"Except as herein provided the Employer, Developer and/or Owner-Builder agrees to abide by all of the terms and conditions of the agreements of the respective crafts employed, including wages, hours, working conditions, health and welfare benefits, pension benefits and other fringe benefits and hereby adopts such Trust or Fund Agreement of each respective Union for such fringe benefits and agrees to the appointment of Employer, Developer and/or Owner-Builder Trustees or their successors.

* * * * * *

"IX.

"This Agreement shall become effective at the date hereof and remain in full force and effect from year to year hereafter unless either party gives at least sixty (60) days' written notice prior to any anniversary date to the other party of its desire to modify or terminate this Agreement."

At the bottom of the Agreement the unions affiliated with the Council are listed. Carpenters, Local 1273, is one of them.

Approximately six weeks before, a union representative had called on the defendant and asked him to sign the Agreement. When the defendant refused, the union placed a picket line on his job. Three weeks later, three union representatives visited the defendant on the job and asked him to sign the Building Trades Agreement. Defendant refused. The union representatives claim that on this occasion they discussed in detail various provisions in the Building Trades Agreement and that they also gave the defendant copies of the 1962 Carpenters Labor and Trust Agreements and explained the fringe benefit provisions. The defendant disputed this testimony and claimed that they only told him that if he signed the Agreement he would have to hire union subcontractors and that if he did not sign, the picketing would continue.

There was ill feeling between the union representatives and the defendant, and I do not believe that any of them accurately remember what they said. I doubt whether the union representatives discussed in detail the specific provisions of the Building Trades Agreement or the Carpenters Labor or Trust Agreements, but they did not make any false or misleading statements. I also find that the defendant knew that if he signed the Building Trades Agreement he would be obligated to do more than hire union subcontractors. At the trial he admitted that he knew that if he signed the Agreement, his men would have to join the union.

Because of the picket line, defendant was unable to get roofers and other workers. On October 4, 1963, defendant went to the union office, complained that the union had cost him a great deal of money, and stated that he was ready to sign the Building Trades Agreement. The secretary of the Building Trades Council was called, and he gave the defendant the Agreement. A few minutes later the defendant signed it. The pickets were removed within an hour. The defendant made no contributions to the Funds until after this action was filed.

Defendant denies that he incurred any liability to the Funds. He contends that the Building Trades Agreement is invalid *first* because there was an insufficient meeting of the minds as to its terms, *second,* because the Building Trades Agreement failed to incorporate by reference the 1962 Carpenters Labor and Trust Agreements, and, *third,* because the trustees of the Funds did not sign the Building Trades Agreement with him.

 There is no merit in defendant's first contention that there was an insufficient meeting of the minds. I find that the defendant was generally familiar with the contents of the Building Trades Agreement. The union representatives were not obligated to read the Agreement to the defendant; they gave defendant the opportunity to read and study this Agreement as well as the Labor and Trust Agreements. The defendant is a high school graduate who knows how to read and write, and he had been a contractor for five years when he signed the Agreement. The union representatives made no misrepresentations. The union has the right to enforce the ordinary meaning of the language employed in an agreement signed by both parties. The picket line was causing the defendant economic loss, but such a loss by a legal picket does not amount to coercion nor does it relieve an employer of the obligation to abide by the terms of the agreement. It would promote both irresponsibility and industrial strife if an experienced businessman were relieved of a labor agreement which he signed without any fraud or misrepresentation because he elected not to read the provisions of the agreement.

 Defendant's second contention that the Building Trades Agreement does not require payments under the Labor and Trust Agreements because it does not specifically refer to and incorporate by reference these Agreements must also fail. Calhoun v. Bernard, 9 Cir. 1964, 333 F.2d 739, 359 F.2d 400 (1966), does not support defendant's contention. It does not hold that there can be no incorporation by reference unless the incorporated document is given a title or label. The Building Trades Agreement is more specific in many respects than the Memorandum Agreement in *Calhoun* even after it was corrected. The Building Trades Agreement expressly provides that the employer adopts the Pension and Health and Welfare Trust Funds of the unions affiliated with the Council. One of the affiliated unions is Carpenters, Local 1273. The only possible Carpenters Pension and Health and Welfare Funds to which the Agreement could refer were those created by the Carpenters Labor Agreement and the Trust Agreement.

 There is also no merit in defendant's contention that because the trustees did not sign the Building Trades Agreement they may not enforce it. Plaintiffs can sue as third party beneficiaries of the Agreement. Calhoun v. Bernard, supra.

 The defendant's final contention is that the granting of specific performance is discretionary and that it would be inequitable to grant specific performance in this case. Trust Funds like the Carpenters Pension and Health and Welfare Trust Funds are approved in § 302 of the Labor-Management Relations Act, 29 U.S.C.A. § 186(c). I do not find it inequitable to specifically enforce contributions to such funds.

Plaintiffs are entitled to recover the contributions the defendant owes to the Funds for both union and non-union employees plus liquidated damages for 10 per cent of such amounts and reasonable attorney's fees in this action, which I find to be $250.00, plus their costs.

If, prior to March 6, 1967, the parties cannot agree on the amount the defendant owes the Funds for the period from October 4, 1963, to the date of this action, the Court will make the determination after a hearing to be held on Monday, March 13, 1967, at 10:30 A.M.

This opinion will serve as findings of fact and conclusions of law pursuant to Rule 52(a), Federal Rules of Civil Procedure.